RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (N.J. Bar No. JS-5525)
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza, One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800
-and-
500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574

Attorneys for Involuntary Debtor, Signature Apparel Group, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SIGNATURE APPAREL GROUP, LLC,<br><br>Involuntary Debtor. | Chapter 7<br><br>Case No. 09-15378 (JMP) |

**APPLICATION IN SUPPORT OF DEBTOR'S EMERGENCY MOTION MODIFYING AUTOMATIC STAY TO PERMIT DEBTOR TO FACTOR ACCOUNTS RECEIVABLE AND OBTAIN POST-PETITION FINANCING FROM CIT GROUP/COMMERCIAL SERVICES, INC. FOR PAYMENT OF CRITICAL INVOLUNTARY GAP PERIOD EXPENSES**

TO:   THE HONORABLE JAMES M. PECK
      UNITED STATES BANKRUPTCY JUDGE:

SIGNATURE APPAREL GROUP, LLC (the "Debtor"), by and through its undersigned counsel, hereby submits this Application in support of its Emergency Motion for an order authorizing the Debtor to modify the automatic stay to factor accounts receivable and obtain post-petition financing from CIT Group/Commercial Services, Inc. ("CIT") for payment of critical involuntary gap period expenses (the "Motion"), and in support respectfully represents as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief requested herein is 11 U.S.C. §§ 303 and 362.

## PRELIMINARY STATEMENT

2.  Prior to the September 4, 2009 filing of an involuntary petition against the Debtor by three (3) of its creditors (the "Petitioning Creditors"), the Debtor obtained financing from CIT under a secured factoring and financing facility. As is set forth herein, the Debtor does not have sufficient liquidity to operate its business during the involuntary gap period without further financing. As a result, through this Motion, the Debtor seeks Court authority to modify the automatic stay and continue the pre-petition factoring arrangement with CIT during the involuntary gap period, *nunc pro tunc* to September 4, 2009, so as to permit the Debtor to pay certain critical expenses necessary for the continuation of its business operations.

## BACKGROUND

**A.  The Filing of the Involuntary Petition.**

3.  On September 4, 2009, the Petitioning Creditors filed an involuntary Chapter 7 bankruptcy petition (the "Involuntary Petition") against the Debtor. The Debtor's current deadline to respond to the Involuntary Petition is October 5, 2009.

4.  Since the filing of the Involuntary Petition, the Debtor has had discussions with the Petitioning Creditors. These discussions are continuing. To date, however, the Debtor

has not obtained the consent of the Petitioning Creditors to seek a consensual dismissal of the Involuntary Petition.

**B.    The Debtor.**

5.     The Debtor is limited liability company organized under the laws of the State of New York, with its principal place of business at 1370 Broadway, 6th floor, New York, NY 10018.

6.     The Debtor is a privately owned multi-faceted apparel company that designs, develops, manufactures, distributes and sells branded apparel worldwide.

**C.    The CIT Factoring Agreements**

7.     The Debtor's primary secured lender is CIT, which provides the Debtor with necessary liquidity through a secured factoring and financing facility. In particular, in January 2007, the Debtor and CIT entered into an Amended and Restated Factoring Agreement dated January 5, 2007, an Amended and Restated Inventory Security Agreement dated January 5, 2007 and an Amended and Restated Equipment Security Agreement dated January 26, 2007 (as amended, modified and/or supplemented to date, collectively, the "Factoring Agreements").[1]

8.     Pursuant to the Factoring Agreements, (i) the Debtor sells, and CIT purchases, the Debtor's accounts, (ii) CIT makes loans, advances, and other financial accommodations to or for the benefit of the Debtor and (iii) the Debtor's indebtedness and/or obligation to CIT under the Factoring Agreements (the "Obligations") is secured by liens and/or security interests on substantially all of the Debtor's assets (the "Collateral").

9.     As of the date of this Motion, the Debtor owes CIT approximately $6,365,000. Further, at present, the Collateral is worth more than $14,000,000, which includes more than $6.6 million in accounts receivable and more than $7.4 million in inventory, at cost.

---

[1] Copies of the Factoring Agreements are annexed hereto, respectively, as **Exhibits "A," "B" and "C."**

10. Since the Filing Date, CIT has provided the Debtor with approximately $365,000 of necessary financing pursuant to the Factoring Agreements in order to allow for the Debtor's continued business operations.

11. CIT has provided the Debtor with financing after the filing of the Involuntary Petition and prior to filing this Motion based upon the Debtor's apparent progress in connection with its negotiations with the Petitioning Creditors regarding a structured dismissal of the Involuntary Petition. However, due to the passage of time since the filing of the Involuntary Petition, CIT requires the entry of an order approving this Motion prior to providing any further financing.

**D.** **The Debtor's Need for Financing During the Involuntary Gap Period**

12. Attached as **Exhibit "D"** is a budget (the "Budget") reflecting the Debtor's projected receipts and disbursements over approximately the next thirty (30) days. As is detailed in the Budget, the Debtor needs approximately $825,000 in financing before its response to the Involuntary Petition is due.

13. CIT has agreed to provide the Debtor with the necessary financing to allow the Debtor to continue its operations over the next few weeks, on the same terms as were in effect prior to the filing of the Involuntary Petition.

14. Importantly, the Debtor is unable to obtain funds other than through the continuation of the Factoring Agreements with CIT and CIT has advised the Debtor that CIT will not make further advances to the Debtor absent the relief sought in this Motion.

**RELIEF REQUESTED AND BASIS THEREFOR**

15. Through this Motion, the Debtor seeks entry of an order, pursuant to 11 U.S.C. § 362 modifying the automatic stay so as to permit the Debtor to continue its pre-petition financing arrangement with CIT during the involuntary gap period, pursuant to the Factoring

4

Agreements, and allowing CIT to collect the proceeds of the Collateral, including without limitation pre-petition and post-petition accounts, whether purchased by CIT before or after the Filing Date, and apply such collections in reduction of the Obligations pursuant to the Factoring Agreements.

    **A.**    **Modification of the Automatic Stay to Permit CIT to collect the Pre-Petition Proceeds of the Collateral is Appropriate.**

16. 11 U.S.C. § 362(a) provides that the automatic stay is effective upon the filing of a petition "under section . . . 303 of this title." 11 U.S.C. § 362(a). As a result, upon the filing of an involuntary bankruptcy petition, the automatic stay prohibits a creditor from collecting its pre-petition collateral, notwithstanding any post-petition lending. See In re Flores, 291 B.R. 44, 56 (Bankr. S.D.N.Y. 2003) ("[t]he only correct conclusion, given the wording of section 362, is that section 362 applies during the gap period, thus preventing prepetition creditors from collecting from the debtor.")

17. 11 U.S.C. § 362(d) permits the Court to modify the automatic stay, and provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>     (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

18. Here, the Debtor submits that cause exists to modify the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit CIT collect the proceeds of the Collateral, including, without limitation, pre-petition and post-petition accounts whether purchased by CIT before or after the Petition Date, and apply such collections in reduction of the Obligations pursuant to the Factoring Agreements. Without financing from CIT, the Debtor will be unable to continue in operation.

19. Importantly, through the modification of the automatic stay, the pre-petition factoring relationship between the Debtor and CIT will continue under the same terms and conditions.

B. **CIT Should be Granted a Lien on Assets Obtained by the Debtor After the Filing Date.**

20. 11 U.S.C. § 303 governs involuntary bankruptcy proceedings, and provides, in relevant part:

> (f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

11 U.S.C. § 303(f).

21. As a result, secured lending, in the ordinary course, is permitted by 11 U.S.C. § 303(f):

> Section 303(f) frees the debtor from the restrictions of section 363, but not those of 364, during the gap period. However, it is still possible for the debtor to obtain secured credit. A security interest taken during the gap period is enforceable. Whether borrowing and granting security is in the ordinary course will depend on the debtor's business. If it has regularly obtained goods on a secured basis or borrowed money at certain times consistently, the action in the gap period may be considered ordinary course.

2 Collier on Bankruptcy, ¶ 303.26 at 303-74 (15th ed. rev.).[2]

22. Here, the Debtor submits that it is merely seeking to continue its ordinary course pre-petition relationship with CIT pursuant to the Factoring Agreements during the involuntary gap period. As a result, pursuant to 11 U.S.C. § 303(f), CIT should be granted CIT a

---

[2] 11 U.S.C. § 364 is not applicable during the involuntary gap period. See In re Roxy Roller Rink Joint Venture, 73 B.R. 521 (Bankr. S.D.N.Y. 1987) (Beatty, U.S.B.J.).

lien, pursuant to the Factoring Agreements, on any assets or receivables obtained after the Filing Date.

### C. The Requested Relief Should be Granted *Nunc Pro Tunc* to the Filing Date.

23. The Debtor also seeks approval of the lending arrangement and the modification of the automatic stay *nunc pro tunc* to the Filing Date. The Second Circuit has ruled that *nunc pro tunc* modification or annulment of the automatic stay is to be permitted under the proper circumstances. See Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc. 157 F.3d 169, 172 (2d Cir. 1998); see also In re WorldCom, Inc., 325 B.R. 511, 521-522 (Bankr. S.D.N.Y. 2005) (discussing factors courts look to in determining whether to grant retroactive relief).

24. Here, the Debtor submits that *nunc pro tunc* approval of this Motion is appropriate. As stated above, the Debtor has not heretofore sought this relief because it has been negotiating with the Petitioning Creditors to obtain a structured dismissal of the Involuntary Petition. CIT has, in good faith, provided the Debtor with certain post-petition financing under the terms of the Factoring Agreements without seeking stay relief, in an attempt to facilitate the negotiations and minimize the costs of administration. Moreover, the Debtor respectfully submits that had it filed this Motion immediately upon the filing of the Involuntary Petition, the Court would likely have granted the Motion at that time. Further, no party will be harmed by the retroactive relief. Moreover, as stated above, if the Court does not grant *nunc pro tunc* approval, CIT has advised the Debtor that it will not provide any further post-petition financing, which will thereby cause the Debtor's operations to cease, resulting in irreparable harm to the Debtor and all creditors.

## WAIVER OF MEMORANDUM OF LAW

25. This Motion does not raise any novel issues of law and, accordingly, the Debtor respectfully requests that the Court waive the requirement set forth in Southern District of New York Local Bankruptcy Rule 9013-1(b), that a separate memorandum of law be submitted.

## NOTICE

26. The Debtor is providing notice of this Motion to CIT, the Petitioning Creditors, the Office of the United States Trustee and all parties who have appeared in this action through the Court's CM/ECF website. Given the emergent nature of the relief sought herein, the Debtor respectfully submits that the aforementioned notice is sufficient.

## NO PRIOR REQUEST

27. No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Debtor seeks entry of an order permitting CIT to provide post-petition involuntary gap period financing, and modifying the automatic stay to permit CIT to collect pre-petition Collateral, in accordance with the terms of the Factoring Agreements, and granting such other and further relief as the Court deems just and proper.

Dated: September 28, 2009
Morristown, New Jersey

          RIKER, DANZIG, SCHERER, HYLAND
           & PERRETTI LLP

          By:    /s/   Kevin J. Larner
          Joseph L. Schwartz, Esq.
          Kevin J. Larner, Esq. (KL-8627)
          One Speedwell Avenue
          Morristown, NJ 079262-1981
          Telephone: (973) 538-0800
          Fax: (973) 538-1984

-and-

500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574

Attorneys for Involuntary Debtor, Signature Apparel Group LLC

3983409.4