**Hearing Date: December 9, 2009 @ 10:00 a.m.**
**Objection Deadline: December 4, 2009 @ 4:00 p.m.**

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (admitted *pro hac vice,* N.J. Bar No. JS-5525)
Kevin J. Larner, Esq. (KL-8627)
Tara J. Mondelli, Esq. (N.J. Bar No. TM-8155)
Headquarters Plaza, One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800

-and-

500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574

Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SIGNATURE APPAREL GROUP, LLC,<br><br>                                        Debtor. | Chapter 11<br><br>Case No. 09-15378 (JMP) |

**APPLICATION IN SUPPORT OF DEBTOR'S MOTION FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO FACTOR
ACCOUNTS RECEIVABLE AND OBTAIN FINANCING FROM THE CIT
GROUP/COMMERCIAL SERVICES, INC.; (II) SCHEDULING A FINAL
HEARING DATE; AND (III) GRANTING OTHER RELATED RELIEF**

TO:   THE HONORABLE JAMES M. PECK
      UNITED STATES BANKRUPTCY JUDGE

SIGNATURE APPAREL GROUP, LLC, the debtor (the "Debtor")[1] in the above-captioned proceeding under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), by and through its undersigned counsel, hereby moves before this Court for entry of an interim order (the "Interim Financing Order"), in substantially the form of order filed herewith, and a final order (the "Final Order"), (a) authorizing the Debtor to factor accounts receivable and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the attached Factoring Agreements or the accompanying Interim Financing Order, as applicable.

obtain financing from The CIT Group/Commercial Services, Inc. ("CIT"), (b) scheduling a final hearing date, and (c) granting other related relief (the "Motion"). In support of this Motion, the Debtors respectfully state:

## PRELIMINARY STATEMENT

1. CIT is the Debtor's pre-petition lender, having provided a secured factoring and financing facility to the Debtor prior to the Debtor's bankruptcy, as well as during the involuntary gap period. In order to allow the Debtor to continue to have sufficient liquidity to continue in operation, CIT has agreed to continue its pre-petition and involuntary gap period financing arrangement with the Debtor on a post-petition basis (the "DIP Financing"), in accordance with the pre-petition loan agreements, as modified by the Interim Financing Order and the Final Order.

2. Without authority to obtain post-petition financing from CIT, the Debtor will be unable to continuing to pay its ordinary and necessary business expenses, which are set forth on the annexed budget (**Exhibit "D"**), which would cause the Debtor to be unable to continue in operation, thereby causing the Debtor's estate to suffer irreparable harm.

3. To maximize the value of the Debtor's remaining assets for the benefit of the Debtor's creditors and the estate, the Debtor respectfully requests that the Court approve the post-petition financing arrangement with CIT pursuant to the terms of the Interim Financing Order and the Final Order.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 4001(c)(1)(B)

4. Material provisions of the DIP Financing are set out in the following sections of the Factoring Agreements, which are annexed as **Exhibits "A," "B" and "C,"** and, as applicable, the Interim Financing Order and Final Order:

(a) <u>Borrowing Base</u>: $35,000,000 or the sum of (i) up to eighty five (85%) percent of the net amount of the Factor Risk Accounts outstanding at such date plus (ii) lesser of $15,000,000 or up to fifty (50) percent of the value of Eligible Inventory at such date. (<u>see</u> Factoring Agreement (**Exhibit A**) at ¶ 6.2).

(b) <u>Interest Rate</u>: JPMorgan Rate, charged at the last day of each month based on the daily debt balances in Funds In Use account. (<u>see</u> Factoring Agreement at ¶ 14.)

(c) <u>Termination</u>: Debtor may terminate only upon an Anniversary Date or with sixty (60) days notice. Agreement remains in effect until such termination. (<u>See</u> Factoring Agreement at ¶¶ 16.1, 16.2.)

(d) <u>Events of Default</u>: Customary for postpetition financing arrangements in retail chapter 11 cases. (<u>See</u> Factoring Agreement at ¶ 17; Interim Financing Order at ¶ 12.)

(e) <u>Liens</u>:
   (i) <u>DIP Lien</u>: Lien on substantially all of the Debtor's assets, provided however that such lien is subject to Senior Third Party Liens and the Carve-Out and shall not be satisfied from proceeds of actions arising under chapter 5 of the Bankruptcy Code (except section 549 of the Bankruptcy Code). (Interim Financing Order at ¶ 5)

   (ii) <u>Adequate Protection</u>: Super-priority administrative expense claim status provided that such claim is subject to the Carve-Out and shall not be satisfied from proceeds of actions arising under chapter 5 of the Bankruptcy Code (except section 549 of the Bankruptcy Code) (Interim Financing Order at ¶ 4)

   (iii) <u>Carve-Out</u>: Various accrued and unpaid fees and expenses as further described in the Interim Financing Order (Interim Financing Order at ¶ 7)

(f) <u>Factoring Fees</u>: 0.5% of gross face amount of all Accounts factored, but in no event less than $2.00 per invoice, subject to certain reductions (See Factoring Agreement at 15.1)

**EXTRAORDINARY PROVISIONS**

5. The relevant extraordinary provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi) and Southern District of New York General Order No. M-274 are set out at

3

the following sections of the Factoring Agreements and the Interim Financing Order, as applicable:

(a) *Grant of Priority or a Lien on Property of the Estate* (Interim Financing Order, ¶ 5);

(b) *Adequate Protection or Priority for a Claim That Arose Before the Commencement of the Case* (Interim Financing Order, ¶¶ 3, 4);

(c) *Determination of the Validity, Enforceability, Priority or Amount of a Claim That Arose Before the Commencement of the Case* (Interim DIP Order ¶ 20);

(d) *Roll-Up* (Not Applicable);

(e) *Waiver or Modification of the Automatic Stay* (Interim Financing Order, ¶ 6);

(f) *Waiver or Modification of Authority to File a Plan, Seek an Extension of Time in Which the Debtor has the Exclusive Right to File a Plan, Request Use of Cash Collateral, or Request Authority to Obtain Credit* (Interim Financing Order, ¶ 9);

(g) *Establishment of Deadlines for Filing a Plan, for Approval of a Disclosure Statement, for a Hearing on Confirmation, or for Entry of a Confirmation Order* (Not Applicable);

(h) *Waiver or Modification of Applicability of Nonbankruptcy Law Relating to Liens* (Not Applicable);

(i) *Release, Waiver or Limitation on any Claim or Cause of Action Belonging to the Estate* (Interim Financing Order, ¶ 20);[2]

(j) *Indemnification* (Not Applicable);

(k) *Release, Waiver or Limitation on Rights under Section 506(c)* (Interim Financing Order, ¶ 8);

(l) *Granting of a Lien on Any Claim or Cause of Action Arising Under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)* (Not Applicable);

(m) *Cross-Collateralization* (Interim Financing Order ¶ 5);

(n) *Carve-Out* (Interim Financing Order at ¶ 7); or

---

[2] Pursuant to General Order No. M-274, because the Interim Financing Order provides a creditors' committee with the right to challenge this provision, it should not be deemed an extraordinary provision.

(o)  ***Termination of Commitment to Advance Funds After Event of Default Without Five Business Days' Notice*** (Not Applicable).

## JURISDICTION AND VENUE

6.  This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a), 361, 362, 363, 364 and 507.

## BACKGROUND

### A.  The Bankruptcy Filing.

7.  On September 4, 2009 (the "Filing Date"), three (3) of the Debtor's creditors (the "Petitioning Creditors") filed an involuntary Chapter 7 bankruptcy petition (the "Involuntary Petition") against the Debtor.

8.  Thereafter, on October 2, 2009, the Court entered a Stipulation and Order Extending the Time for Signature Apparel Group, LLC to Respond to the Involuntary Petition, which extended the Debtor's time to respond to the Involuntary Petition to October 13, 2009.  On October 16, 2009, the Court entered a second Stipulation and Order Extending the Time for Signature Apparel Group, LLC to Respond to the Involuntary Petition, which extended the Debtor's time to respond to the Involuntary Petition to October 30, 2009.

9.  On November 5, 2009, the Court entered an Order for Relief (the "Order for Relief"), thereby causing this case to proceed as a Chapter 7 case.

10.  On November 9, 2009, the Debtor filed, on shortened time, a Motion to Convert the Case to a Case under Chapter 11 of the Bankruptcy Code Pursuant to 11 U.S.C.

5

§ 706(a) (the "Motion to Convert").  The Motion to Convert was granted by the Court by Order dated November 13, 2009 (the "Conversion Date"), over the objection of the Petitioning Creditors.

11. Since the Conversion Date, the Debtor has been authorized to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No statutory committees have yet been appointed in this bankruptcy case.

B. **The Debtor.**

12. The Debtor is a limited liability company organized under the laws of the State of New York, with its principal place of business at 1370 Broadway, 6th floor, New York, NY 10018.

13. The Debtor is a privately owned multi-faceted apparel company that, prior to the Filing Date, designed, developed, manufactured, distributed and sold branded apparel worldwide.  Since the Filing Date, the Debtor has continued to sell its inventory to its customers.

C. **The Debtor's Pre-Petition Factoring Agreements With CIT**

14. The Debtor's primary pre-petition secured lender was CIT, which provided the Debtor with necessary liquidity through a secured factoring and financing facility. In particular, in January 2007, the Debtor and CIT entered into an Amended and Restated Factoring Agreement dated January 5, 2007 (the "Factoring Agreement"), an Amended and Restated Inventory Security Agreement dated January 5, 2007, and an Amended and Restated Equipment Security Agreement dated January 26, 2007 (as amended, modified and/or supplemented to date, collectively, the "Factoring Agreements").[3]

15. Pursuant to the Factoring Agreements, (i) the Debtor sells, and CIT purchases, the Debtor's accounts, (ii) CIT makes loans, advances, and other financial

---

[3] Copies of the Factoring Agreements are annexed hereto, respectively, as **Exhibits "A," "B" and "C."**

accommodations to or for the benefit of the Debtor and (iii) the Debtor's indebtedness and/or obligation to CIT under the Factoring Agreements (the "Obligations") is secured by liens and/or security interests on substantially all of the Debtor's assets (the "Collateral").

### D. The Debtor's Involuntary Gap Period Financing from CIT

16. After the Filing Date, CIT continued to provide the Debtor with necessary financing pursuant to the Factoring Agreements in order to allow for the Debtor's continued business operations. On or about September 28, 2009, the Debtor filed an emergency motion for an order authorizing the Debtor to modify the automatic stay to factor accounts receivable and obtain post-petition financing from CIT for payment of critical involuntary gap period expenses (the "Gap Financing Motion").

17. On or about October 1, 2009, the Court entered an order granting the Gap Financing Motion (the "Gap Financing Order"). The Gap Financing Order, among other things, authorized the Debtor to obtain post-petition advances from CIT and sell post-petition accounts to CIT pursuant to the Factoring Agreements, *nunc pro tunc* to the Filing Date, pending the entry of an order for relief or other disposition of the Debtor's involuntary Chapter 7 case, with such advances and all other post-petition indebtedness of the Debtor to CIT pursuant to the Factoring Agreements to be added to and constitute a part of the Obligations secured by the Collateral, including, without limitation, post-petition accounts and inventory and the proceeds thereof, as and to the extent set forth in the Factoring Agreements.

### E. The Debtor's Need for Post-Conversion Date Financing and Description of the Agreement with CIT

18. As is reflected in the budget projecting the Debtor's receipts and disbursements through the first quarter of 2010, which is attached as **Exhibit "D"** (the

"Budget"), absent continued financing from CIT, the Debtor will not have sufficient cash to continue in operation.

19. Importantly, the Debtor is unable to obtain funds other than through the continuation of its pre-existing borrowing arrangement with CIT and CIT has advised the Debtor that CIT will not make further advances to the Debtor absent the relief sought in this Motion.

20. Consequently, the Debtor has negotiated with CIT, whereby CIT has agreed to continue to finance the Debtor's operations in accordance with the Factoring Agreements, as modified and supplemented by the Interim Financing Order and the Final Order, which, coupled together provide that the Debtor will sell its post-Conversion Date accounts (the "DIP Accounts") to CIT, and obtain post-conversion secured loans, advance and/or financial accommodations from CIT (the "DIP Advances") on terms substantially similar to those in effect during the Gap Period and prior to the filing of the Involuntary Petition.

21. The Interim Financing Order and Final Order provide that the Debtor is authorized to sell the DIP Accounts to CIT, and CIT is authorized to purchase the DIP Accounts, and to make the DIP Advances to the Debtor in accordance with the Budget. (See Interim Financing Order at ¶ 2.)

22. Additionally, CIT shall be granted an allowed administrative expense claim against the Debtor's estate, which will not be paid from any recoveries from causes of action brought pursuant to 11 U.S.C. §§ 544, 547, 548, 550 and 553. (See Interim Financing Order at ¶¶ 3-4.)

23. As further security for the DIP Claim, CIT will be granted a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien", and as so granted to CIT, the "DIP Lien") in all of the Debtor's presently-owned or after-acquired property and assets, whether

8

such property and assets were acquired before or after the Conversion Date (collectively, the "Collateral", and to the extent acquired after the Conversion Date, the "DIP Collateral"). (See Interim Financing Order at ¶ 6).

24. Importantly, the post-petition financing includes a Carve-Out for various expenses. (See Interim Financing Order at ¶ 7.)

## RELIEF REQUESTED AND BASIS THEREFOR

### A. The DIP Financing Should Be Approved.

25. Approval of the DIP Financing will provide the Debtor with immediate and ongoing access to borrowing availability to pay its operating expenses, which are set forth on the attached Budget. See Exhibit F. Unless the Debtor has the ability to pay these expenses, the Debtor will be forced to cease operations, which would result in a deterioration in the value of the remaining assets of the estate.

26. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses as specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. See 11 U.S.C. § 364(c).

27. Section 364(d) of the Bankruptcy Code allows a debtor to obtain credit secured by a senior or equal lien on property of the estate that is subject to a lien, provided that (i) the debtor is unable to obtain such credit otherwise, and (ii) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. See 11 U.S.C. § 364(d).

28. Here, the Debtor proposes to obtain the financing set forth in the Factoring Agreements, the Interim Financing Order and the Final Order by providing, *inter alia*, superpriority claims, security interests, and liens pursuant to sections 364(c)(1) - (3) and 364(d) of the Bankruptcy Code.

29. Despite efforts, the Debtor has been unable to procure sufficient financing (i) in the form of unsecured credit allowable under section 503(b)(1), (ii) as an administrative expense under section 364(a) or (b), (iii) in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1), or (iv) without granting priming liens pursuant to section 364(d). The Debtor has not been able to obtain postpetition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein.

30. The Debtor has negotiated with CIT in good faith and at arms' length. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance therewith. See, e.g., In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); see also In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985).

31. Furthermore, section 364(d) does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient

10

efforts to obtain financing without the need to grant a senior lien. In re 495 Central Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most lend money only in return for a senior secured position").

32.   Most, if not all, of the Debtor's assets are encumbered by pre-petition first priority liens held by CIT, and the Debtor has been unable to procure the required funding absent the proposed superpriority claims and liens. The Debtor submits that the circumstances of this case require the Debtor to obtain financing under sections 364(c) and (d) of the Bankruptcy Code, and submits that the DIP Financing reflects the exercise of its sound business judgment. The Debtor further submits that the terms and conditions of the DIP Financing are fair and reasonable, and were negotiated by independent parties in good faith and at arms' length.

### B.   Adequate Protection.

33.   Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code, provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

34.   What constitutes adequate protection must be decided on a case-by-case basis. See In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). The focus of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. 11 U.S.C. § 361. See 495 Central Park Ave. Corp., 136 B.R. at 631.

11

35. The Debtor submits that the adequate protection proposed here is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code.

### C. Modification of the Automatic Stay Is Appropriate.

36. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to (i) grant the security interests, liens, and superpriority claims described above with respect to CIT, as the case may be, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens, (ii) permit CIT to exercise, upon the occurrence and during the continuance of an Event of Default all rights and remedies under the Factoring Agreements, and (iii) implement the terms of the proposed Interim Financing Order and the Final Order. See Interim Order, ¶6.

37. The Debtor submits that automatic stay modifications of this kind are ordinary and standard features of postpetition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### D. Interim Approval of the DIP Facility Should Be Granted.

38. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit under Bankruptcy Code section 364 may not be commenced earlier than fifteen (15) days after the service of such motion.

39. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable to the debtor's estate, subject to the rights of parties in interest at the final hearing.

40. As noted, the Debtor has an urgent and immediate need for cash to continue to operate, and currently does not have sufficient liquidity with which to operate on an ongoing basis.

41. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the Motion, the Debtor will be immediately and irreparably harmed.

## **WAIVER OF MEMORANDUM OF LAW**

42. Because there are no novel issues of law presented herein, pursuant to SDNY Local Bankr. R. 9013-1(b), the Debtor respectfully requests that the Court waive the requirement that the Debtor file a memorandum of law in support of this Motion.

## **NOTICE**

43. The Debtor is providing notice of this Application to the Office of the United States Trustee; counsel to CIT, the Debtor's pre-petition and involuntary gap period lender; the Debtor's twenty (20) largest unsecured creditors; and all parties who have appeared in this action through the Court's CM/ECF website. In light of the nature of the relief sought, the Debtor submits that no other or further notice need be provided.

## **NO PRIOR REQUEST**

44. No previous request for the relief sought herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the Debtor seeks entry of an order granting the Debtor relief requested in this Motion, and granting such other and further relief as the Court deems just and proper.

Dated: November 25, 2009
Morristown, New Jersey

                    RIKER, DANZIG, SCHERER, HYLAND
                      & PERRETTI LLP

                By:    /s/ Joseph L. Schwartz
                      Joseph L. Schwartz, Esq. (Admitted *Pro Hac Vice*)
                      Kevin J. Larner, Esq. (KL-8627)
                      One Speedwell Avenue
                      Morristown, NJ 079262-1981
                      Telephone: (973) 538-0800
                      Fax: (973) 538-1984

                      -and-

                      500 Fifth Avenue, Suite 4920
                      New York, New York 10110
                      (212) 302-6574

                      Proposed Attorneys for the Debtor

3996391.4