UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In Re:

SIGNATURE APPAREL GROUP LLC,

              Debtor.

--------------------------------------------------------x

Chapter 11

Case No. 09-15378-JMP

## INTERIM ORDER
### AUTHORIZING THE PURCHASE AND SALE OF ACCOUNTS AND THE INCURRANCE OF SECURED INDEBTEDNESS WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATE PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE

**WHEREAS,** (a) on September 4, 2009 (the "Petition Date"), certain creditors (the "Petitioning Creditors") of Signature Apparel Group, LLC (the "Debtor") filed an involuntary petition for relief (the "Involuntary Petition") pursuant to Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") against the Debtor, (b) the Debtor's time to answer the Involuntary Petition expired on October 31, 2009 and an order for relief was entered by the Court pursuant to Chapter 7 of the Bankruptcy Code on November 5, 2009, and (c) the Debtor moved the Court on November 9, 2009 to convert this case to a case under Chapter 11 of the Bankruptcy Code, which motion was granted by order of the Court entered on November 13, 2009 (the "Conversion Date"); and

**WHEREAS,** the Debtor has admitted and represented to the Court (the "Admissions"), without prejudice to the rights of third parties, that as of the Petition Date, The CIT Group/Commercial Services, Inc. ("CIT") provided a secured factoring and financing facility to the Debtor pursuant to, among other things, an Amended and Restated Factoring Agreement dated January 5, 2007, an Amended and Restated Inventory Security Agreement dated January 5,

2007, and Amended and Restated Equipment Security Agreement dated January 26, 2007 and an Amended and Restated Letter of Credit Agreement dated January 5, 2007 (as amended, modified and/or supplemented to date, collectively, the "Factoring Agreements"), pursuant to which, among other things, (a) the Debtor sold, and CIT purchased, the Debtor's accounts as valid and true purchases and sales thereof, (b) CIT made loans, advances and other financial accommodations to or for the benefit of the Debtor, (c) the Debtor's indebtedness and/or obligations to CIT under the Factoring Agreements (as such term is defined in the Factoring Agreements, the "Obligations") was secured by liens and/or security interests in substantially all of the Debtor's assets the value of which exceeded the amount of such Obligations; and

**WHEREAS,** pursuant to the Court's "Emergency Order Authorizing Debtor To Incur Secured Debt From The CIT Group/Commercial Services, Inc. For Payment Of Critical Gap Period Expenses" entered on October 1, 2009 (docket no. 13) (the "Gap Period Order"), the Court, among other things, authorized the Debtor to obtain post-petition advances from CIT and to sell post-petition accounts to CIT pursuant to the Factoring Agreements, nunc pro tunc to the Petition Date, pending the entry of an order for relief or other disposition of the Debtor's involuntary Chapter 7 case, with such advances and all other post-petition indebtedness of the Debtor to CIT pursuant to the Factoring Agreements to be added to and constitute a part of the Obligations secured by CIT's collateral, including without limitation post-petition accounts and inventory and the proceeds thereof, as and to the extent set forth in the Factoring Agreements; and

**WHEREAS,** the Debtor applied to the Court on November 25, 2009 (the "Application") for authority pursuant to Bankruptcy Code § 363 and § 364(c), to ratify, reaffirm and adopt, as modified and supplemented by this Order, the Factoring Agreements, and thereby sell the

Debtor's post-Conversion Date accounts (the "DIP Accounts") to CIT, and obtain post-petition secured loans, advances and/or financial accommodations from CIT (the "DIP Advances"); and

**WHEREAS,** the Debtor has further represented to the Court, without prejudice to the rights of third parties, as follows:

(a)    CIT is willing to purchase the DIP Accounts, make the DIP Advances and consent to the Debtor's use of CIT's collateral and Cash Collateral (as such term is defined in Bankruptcy Code § 363(a)), only upon the conditions contained in this Order;

(b)    the Debtor is unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense necessary to maintain and conduct its business;

(c)    the Debtor is unable to obtain secured credit allowable only under Bankruptcy Code § 364(c)(1) and (c)(2), except under the terms and conditions provided in this Order; and

(d)    the Debtor reasonably and in good faith believes that use of the DIP Advances pursuant to this Order and the final order sought by the Debtor in furtherance of this Order (the "Final Order") is adequate to fund all projected legitimate and allowable expenses of its Chapter 11 case during the period covered by the budget annexed as an exhibit to the Application (the "Budget");

and

**WHEREAS,** the Court held an interim hearing with respect to the Application on December 9, 2009 (the "Interim Hearing"); and the Court, having considered the Application and the proceedings before the Court at the Interim Hearing; and all objections, if any, to the interim

relief requested in the Application having been withdrawn, resolved or overruled by the Court as reflected on the record of the Interim Hearing; and

**WHEREAS, the Debtor hereby represents to the Court as follows:**

(a)     it is in the best interest of the Debtor's estate that it be allowed to sell the DIP Accounts to CIT, and to obtain the DIP Advances from CIT, and to use CIT's collateral, on an interim basis under the terms and conditions set forth in the Factoring Agreements, as such is necessary to permit the orderly administration of the Debtor's estate;

(b)     the purchase and sale of the DIP Accounts pursuant to this Order is in good faith and CIT is entitled to the protection of Bankruptcy Code § 363(m);

(c)     the DIP Advances are being extended by CIT in good faith, and CIT is entitled to the protection of Bankruptcy Code § 364(e);

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

(a) notice of relief sought by the Application and the hearings with respect thereto, believed by the Debtor to be the best available notice under the circumstances, has been given pursuant to Bankruptcy Rule 4001(c);

(b) the Court has core jurisdiction over the Debtor's bankruptcy case, the Application, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

(c) good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate;

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      The Debtor is hereby authorized and deemed to ratify and adopt the Factoring Agreements, including the validity and enforceability of the pre-Conversion Date Obligations to CIT incurred thereunder and the liens and security interests granted to CIT thereunder, subject to the rights of any official committee of unsecured creditors (the "Committee") and third parties to challenge same to the extent set forth below.

2.      The Debtor is authorized to sell the DIP Accounts to CIT, and CIT is authorized to purchase the DIP Accounts, and to make the DIP Advances to the Debtor in accordance with the Budget.  Notwithstanding the foregoing, CIT shall have no obligation to make the DIP Advances unless and until such time as the Debtor is in credit balance with CIT, and CIT shall have no obligation to make any DIP Advances unless supported by new DIP Accounts contemporaneously purchased by CIT.  Nothing in this Order shall prejudice or impair CIT's rights as sole and absolute owner of the DIP Accounts, including without limitation CIT's rights of collection thereof.

3.      As adequate protection for any post-petition diminution in value of CIT's interests in the Debtor's assets as such existed as of the Conversion Date, including without limitation that caused by the Debtor's use of inventory and/or Cash Collateral, including without limitation for purposes of the "Carve-Out" (as such term is defined below), CIT is hereby granted a DIP Claim (the "Adequate Protection Claim") against the Debtor's estate.

4.      The Adequate Protection Claim and any and all post-Conversion Date Obligations of the Debtor to CIT pursuant to the Factoring Agreements and this Order (collectively, the "DIP Claim") shall be allowed administrative expenses of the Debtor's estate which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter

by the Debtor and over all administrative expenses or charges against property arising in the Debtor's Chapter 11 case or any superseding Chapter 7 case, including without limitation those specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114, subject only to the Carve-Out. Notwithstanding the foregoing, the DIP Claim shall not be paid from recoveries upon causes of action brought pursuant to Bankruptcy Code §§ 544, 547, 548, 550 and 553.

5. Pursuant to Bankruptcy Code §§ 362, 363(c) and 363(e), as security for the DIP Claim, the Debtor is hereby authorized to and hereby deemed to grant to CIT a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien", and as so granted to CIT, the "DIP Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Conversion Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral", and to the extent acquired after the Conversion Date, the "DIP Collateral"). Notwithstanding the foregoing, (a) the DIP Lien shall be subject to (i) Liens existing as of the Petition Date that are valid, enforceable and not subject to avoidance by a trustee under the Bankruptcy Code and any replacement Liens granted by order of the Court with respect to such Liens (collectively, "Senior Third Party Liens") and (ii) the Carve-Out, and (b) the DIP Collateral shall not include causes of action brought pursuant to Bankruptcy Code §§ 544, 547, 548, 550 and 553 and recoveries upon such causes of action. CIT shall not be subject to the equitable doctrines of "marshaling" or any similar claim or doctrine with respect to any Collateral.

6. The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) CIT to implement and perform the terms of this Order, and (b) the Debtor to create,

and CIT to perfect, any and all Liens granted hereunder. The Debtor and CIT shall not be required to enter into any additional security agreements to create the Liens granted by this Order or to file UCC financing statements or other instruments with any other filing authority to perfect the Liens granted by this Order or take any other action to memorialize and/or perfect such Liens, which shall be and are deemed valid, binding, enforceable and automatically perfected by the docket entry of this Order by the Clerk of the Court. If, however, CIT shall, in its sole and absolute discretion, elect for any reason to file, record or serve any such security agreements, financing statements or other documents with respect to such Liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Order by the Clerk of the Court. CIT is hereby relieved of any requirement to file proofs of claim in the Debtor's bankruptcy case with respect to the DIP Claim and/or the DIP Lien, but CIT may in its sole and absolute discretion file any such proof of claim.

7. Notwithstanding CIT's pre-petition, post-petition and post-Conversion Date claims and Liens, the Collateral, including without limitation Cash Collateral, may be used for payment of the fees and expenses specified in the following subparagraphs (collectively, the "Carve-Out"), with any amounts so paid or otherwise funded by CIT being Obligations afforded DIP Claim status and secured by the DIP Lien:

(a) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any unpaid fees and applicable interest, if any, due and owing to the Clerk of the Court (collectively, the "Statutory Fees"), whether incurred or payable prior or subsequent to (i) the occurrence and/or continuance of a duly noticed Event of Default (as

such term is defined below) or (ii) the occurrence of the Expiration Date (as such term is defined below);

(b) the allowed fees and expenses of the professionals retained by the Debtor whose retentions are approved pursuant to final orders of the Court (the "Debtor's Professionals") in aggregate amount not to exceed $230,000, subject to the limitations on the use of such funds set forth in this Order;

(c) the allowed fees and expenses of the professionals retained by the Committee whose retentions are approved pursuant to final orders of the Court (the "Committee's Professionals"), and the reasonable expenses of members of the Committee (other than the fees and expenses of professionals employed by members of the Committee), in aggregate amount not to exceed $50,000, subject to the limitations on the use of such funds set forth in this Order;

(d) the fees and expenses of Ian Gazes, as interim Chapter 7 Trustee, incurred in November 2009 in the amount of $9,477.55;

(e) the allowed fees and expenses of any Chapter 7 Trustee under Bankruptcy Code § 726(b), including without limitation the allowed fees and expenses of the professionals retained by the Chapter 7 Trustee and approved by final orders of the Court (the "Chapter 7 Trustee's Professionals", and together with the Debtor's Professionals, the Committee's Professionals and any other professionals retained by any other official committee or party in interest pursuant to order of the Court, the "Professionals"), in aggregate amount not to exceed $10,000.

8. Effective, *nunc pro tunc* to the date of this Interim Order, upon the entry of a Final Order containing such provision:

(a) the Debtor waives irrevocably all claims and rights, if any, it might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 506(c) or 552(b).

(b) except from and pursuant to the terms of the Carve-Out, no entity in the course of the Debtor's bankruptcy case (whether Chapter 11 or subsequent Chapter 7), shall be permitted to recover from the Collateral (whether directly or through grant of derivative and/or equitable standing in the name of the Debtor and/or the Debtor's estate) any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code §§ 506(c) or 552(b) without the prior written consent of CIT; and

(c) except from and pursuant to the terms of the Carve-Out, no entity shall be permitted to recover from the Collateral, or assert against CIT, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy case, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget.

9. So long as there are any Obligations outstanding to CIT, unless CIT shall have given its prior written consent, or the Court enters an order, upon proper notice to CIT and after a hearing, requiring that all of the Obligations be immediately satisfied in full, there shall not at any time be entered in the Debtor's Chapter 11 cases any further orders which authorize: (a) under Bankruptcy Code § 363, the use of Cash Collateral in which CIT has an interest, or the sale, use, or lease, other than in the ordinary course of business, of property of the Debtor in which CIT has an interest; (b) the obtaining of credit or the incurring of indebtedness pursuant to

Bankruptcy Code §§ 364(c) or 364(d), or any other grant of rights against the Debtor and/or its estate, secured by a Lien in the Collateral or entitled to priority administrative status which is equal or superior to that granted to the DIP Claim; or (c) the return of goods by the Debtor pursuant to Bankruptcy Code § 546(h).

10.     In addition to the fees, costs, charges and expenses authorized under the Factoring Agreements, until such time as the Obligations have been indefeasibly repaid in full, the Debtor shall pay in accordance with the procedures set forth in the following sentences, as allowed Obligations afforded DIP Claim status secured by the DIP Lien, all of CIT's reasonable attorneys' and other professionals' fees and reimbursable expenses arising from or related to (a) this Order, including without limitation the negotiating, closing, documenting and obtaining of Court approval thereof, (b) all proceedings in connection with any Disposition (as such term is defined below), (c) all proceedings in connection with the interpretation, amendment, modification, enforcement, enforceability, validity or implementation of this Order and/or the Factoring Agreements, (d) defending any Challenge (as such term is defined below) and/or responding to any Bankruptcy Rule 2004 discovery or other investigation brought with respect to any prospective Challenge, (e) all other matters and proceedings arising in or related to the Debtor's bankruptcy case, and (f) all reasonable expenses, costs and charges in any way or respect arising in connection with the foregoing (collectively, the "CIT Expenses").  CIT may charge the Debtor's account for the payment of any CIT Expenses and shall provide the Debtor's counsel and the Committee's counsel with copies of CIT's monthly statements of account with respect to the Debtor on which such charges shall be set forth.  Payment of the CIT Expenses so charged shall be deemed final unless the Debtor and/or the Committee notifies CIT in writing, within thirty (30) days after the date of receipt of a statement of account, that such party disputes

the reasonableness of any CIT Expenses set forth thereon, in which case the disputed amounts shall be determined by the Court or otherwise resolved by the parties.

11.     Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a)     the Court enters an order authorizing the sale of all or substantially all assets of the Debtor that does not provide for the payment in full of the Obligations in cash upon the closing of the sale, unless otherwise agreed by CIT in its sole and absolute discretion;

(b)     the Court enters an order granting relief from the automatic stay to a third party with respect to material assets of the Debtor's estate;

(c)     the Debtor ceases operations of its present business as such existed on the Conversion Date or takes any material action for the purpose of effecting the foregoing without the prior written consent of CIT, except to the extent contemplated by the Budget;

(d)     the Debtor's bankruptcy case is either dismissed or converted to a Chapter 7 case, pursuant to an order of the Court the effect of which has not been stayed;

(e)     a Chapter 11 trustee, or an examiner with materially expanded powers beyond those set forth in Bankruptcy Code §§ 1106(a)(3) and 1106(a)(4), or any other responsible person or officer of the Court with similar powers is appointed, by order of the Court the effect of which has not been stayed;

(f)     this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of CIT, materially and

adversely affect the rights of CIT hereunder or shall materially and adversely affect the priority of any or all of the Obligations and/or CIT's Liens;

(g)    the occurrence subsequent to the Petition Date of an Event of Default under the Factoring Agreements, other than any Event of Default occurring and/or existing solely because of the commencement of the Debtor's bankruptcy case on the Petition Date, and/or the continuance of the automatic stay to the extent not vacated by this Order;

(h)    (1) the Debtor expends any funds or monies for any purpose other than those set forth on the Budget without CIT's consent, (2) the Debtor expends any funds or monies in excess of the amounts authorized in the Budget, provided that for the cumulative Budget periods which have occurred the Debtor's actual cash disbursements may be up to ten percent (10%) more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods without such expenditures constituting an Event of Default, (3) the Debtor fails to achieve revenues of at least ninety percent (90%) of the revenue projections set forth in the Budget for the cumulative Budget periods which have occurred, tested bi-monthly for each thirteen (13) week period;

(i)    the occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, in each case as determined by CIT in its sole and absolute discretion and measured as compared to the Conversion Date, in (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtor, (2) the Debtor's ability to repay the Obligations, and/or (3) the value of the Collateral;

(j)     any material and/or intentional misrepresentation by the Debtor in any financial reporting or certifications to be provided by the Debtor to CIT;

(k)     non-compliance or default by the Debtor with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within three (3) business days after notice of such non-compliance or default is given to the Debtor by CIT.

12.     Upon the occurrence of an Event of Default and the giving written notice thereof by CIT to the Debtor's, the Committee's and the U.S. Trustee's respective counsel (which notice may be given facsimile or e-mail transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), or upon the occurrence of the Expiration Date:

(a)     CIT shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of Bankruptcy Code or applicable law or rule, to take immediate reasonable action to protect the Collateral from harm, theft and/or dissipation;

(b)     CIT shall have no obligation to make any further DIP Advances other than to fund any unpaid or unfunded portion of the Carve-Out;

(c)     with respect to an Event of Default as to which a Default Notice has been given, the Debtor, the Committee and/or the U.S. Trustee shall have seven (7) days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to CIT enjoining or restraining CIT from exercising rights and remedies based upon the Event of Default specified in the Default Notice ("Restraint on Remedies"), provided that a Restraint on Remedies may be sought solely on grounds of

the non-occurrence or timely cure of the Event of Default specified in the Default Notice; and

(d)     (i) with respect to an Event of Default as to which a Default Notice has been given, immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) immediately upon the occurrence of the Expiration Date, but in either case subject in all respects to the Carve-Out, the payment of any and all Obligations of the Debtor to CIT shall be due and payable, the Debtor's use of the Collateral (including without limitation inventory and/or Cash Collateral) pursuant to this Order and the Budget shall cease, CIT shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of Bankruptcy Code, to exercise contractual, legal and equitable rights and remedies as to all or such part of the Collateral as CIT shall elect, and CIT shall have the right, free of the restrictions of Bankruptcy Code § 362 or any other section of Bankruptcy Code, to impose an "administrative freeze" with respect to, and thereafter set off, the Debtor's cash on deposit at or within its control.

13.     The Debtor, at its expense, shall (a) continue to keep the Collateral fully insured as set forth in the Factoring Agreements, and (b) pay any and all undisputed pre-petition and post-petition taxes, assessments and governmental charges with respect to the Collateral, in both cases as provided under the Factoring Agreements.  Until such time as the Obligations have been indefeasibly repaid in full, the Debtor shall provide CIT with proof of the foregoing within three (3) business days of written demand and will give CIT reasonable access to its records in this regard.

14.     The Debtor shall provide CIT with such written reports as are required under the Pre-Petition Agreements, until such time as the Obligations have been indefeasibly repaid in full. In addition, until such time as the Obligations have been indefeasibly repaid in full, the Debtor shall provide CIT with a rolling thirteen (13) week cash flow forecast on alternate Fridays commencing December 4, 2009 in a form similar to the Budget, accompanied by a reconciliation showing the Debtor's actual cash receipts and disbursements for the prior concluded Budget period. All written reports provided by the Debtor to CIT shall be certified by an officer of the Debtor acceptable to CIT to be accurate to the best of such officer's knowledge, information and belief.

15.     CIT shall have the right, upon one (1) business day telephone or facsimile-transmitted written notice to the Debtor, at any time during the Debtor's normal business hours, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the Collateral, and the Debtor shall make all of same available to CIT and its representatives, for such purposes, until such time as the Obligations have been indefeasibly repaid in full. CIT and its representatives may, without CIT being deemed to be in control of, or a fiduciary for, the Debtor, and without obtaining prior consent from the Debtor, (1) discuss the Debtor's books and records, the Collateral, the Budget and/or the Debtor's business operations with the Debtor's directors, officers, retained professionals (including without limitation attorneys, accountants, investment bankers and financial, restructuring and/or workout advisors and consultants) or employees, and (2) make observations and recommendations regarding the Debtor's books and records, the Collateral, the Budget and/or the Debtor's business operations, to the Debtor's directors, officers, retained professionals

(including without limitation attorneys, accountants, investment bankers and financial, restructuring and/or workout advisors and consultants) or employees.

16. For purposes of this Order, (a) "Proceeds" shall mean any and all payments, proceeds or other consideration realized upon the sale, liquidation, realization, collection or other manner of disposition of the Collateral, whether in the ordinary course of the Debtor's business (including without limitation accounts and other proceeds arising from the Debtor's sales of inventory and/or performance of services) or other than in the ordinary course of the Debtor's business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection or other manner of disposition of Collateral other than in the ordinary course of the Debtor's business, including without limitation any sale authorized pursuant to Bankruptcy Code § 363 and/or any plan of reorganization.

17. From and after the Petition Date, the pre-petition clearing, dominion, lockbox and similar accounts maintained by CIT on behalf of the Debtor pursuant to the Factoring Agreements for the collection of Proceeds obtained in the ordinary course of the Debtor's business (the "Collection Accounts") shall be maintained in full force and effect, and the payment procedures under which such accounts are administered (the "Collection Procedures"), unless otherwise directed by CIT. Without limitation of the foregoing, from and after the date of this Order, the Debtor shall continue to remit to CIT such cash, cash equivalents and checks as are Proceeds obtained in the ordinary course of the Debtor's business to CIT, and/or shall cause customers and account debtors of the Debtor to remit to CIT such cash, cash equivalents and checks as are such Proceeds to the Collection Accounts in accordance with the Collection Procedures. To the extent that as of the date of this Order, the Debtor maintains custody and/or control of any cash, cash equivalents or checks that is Cash Collateral, whether in its possession,

in bank accounts, in lockbox accounts or otherwise, other than in the Collection Accounts and in contravention of the Collection Procedures, then upon entry of this Order the Debtor shall deliver such cash, cash equivalents or checks, and the proceeds thereof, to CIT.

18.     The Debtor and any successors to the Debtor, including without limitation any successor trustee or trustees, shall assign or direct to CIT any and all Proceeds realized in any Disposition, and immediately deliver any and all such Proceeds which come into their possession to CIT in the form received.  No further order of the Court shall adversely affect the rights of CIT to receive the Proceeds of any Disposition in accordance with the provisions of this paragraph or as otherwise agreed to by CIT.  In furtherance of the foregoing, neither the Debtor nor the Committee shall seek to cause the escrow of, enjoin CIT's receipt of, or otherwise withhold from CIT any Proceeds of any Disposition.  The foregoing is without prejudice to the rights of (a) CIT and/or the Committee to object to any proposed Disposition and/or (b) any third party with respect to the allocated Proceeds of any Disposition of Collateral encumbered by a Senior Third Party Lien.  CIT is hereby authorized pursuant to Bankruptcy Code § 363(k) to credit-bid all or any portion of the Obligations at any Disposition.

19.     CIT is authorized, notwithstanding the provisions of Bankruptcy Code § 362, to retain and apply all Proceeds obtained or received pursuant to the preceding two paragraphs of this Order first to the repayment of the pre-Conversion Date Obligations, including without limitation interest accrued with respect thereto, until such are paid in full, and thereafter to the repayment of the DIP Claim.  *Nunc pro tunc* to the date of this Interim Order, upon the entry of a Final Order containing such provision, such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 506(c) or 552(b).

20.     Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Order, (a) the Admissions shall be binding upon the Debtor in all circumstances, (b) the validity, extent, priority, perfection, enforceability and non-avoidability of CIT's pre-petition claims against the Debtor and/or pre-petition Liens shall not be subject to challenge by the Debtor, (c) the Debtor shall not seek to avoid or challenge (whether pursuant to Chapter 5 of Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of CIT prior to the Petition Date, and (d) the Debtor hereby releases and waives all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest (1) any Defaults or Events of Default (as defined in the Factoring Agreements) which were or could have been declared by CIT as of the Petition Date and/or the Conversion Date, (2) any provisions of the Factoring Agreements, (3) the amount of the pre-petition and pre-Conversion Date Obligations and/or the value of the Collateral on the Petition Date and/or the Conversion Date, or (4) the conduct of CIT and its directors, officers, employees, agents, attorneys and other professionals (collectively, the "CIT Parties") in administering the business relationship among the Debtor and CIT, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action.  CIT shall have no Carve-Out obligations or obligations with respect to DIP Advances to the Debtor or to any of the Debtor's Professionals with respect to any investigation or litigation (whether threatened or pending) by the Debtor with respect to any matter released, waived or specified as not subject to challenge by the Debtor pursuant to this paragraph.

21.     Notwithstanding the Debtor's release and waiver set forth in the preceding paragraph of this Order, the Committee shall have 60 days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of a

Final Order to commence an adversary proceeding against any of the CIT Parties for the purpose (collectively, a "Challenge") of (1) challenging the validity, extent, priority, perfection, enforceability and non-avoidability of CIT's pre-petition claims and/or Liens against the Debtor, (2) seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of CIT prior to the Petition Date, and/or (3) seeking damages or equitable relief against CIT arising from or related to the pre-petition business relationship between the Debtor and CIT, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action. The Committee is granted standing to commence such a proceeding. Any other party in interest shall have 75 days (or a longer period for cause shown before the expiration of such period) from the date of entry of a Final Order to move this Court for an order granting it standing to commence a Challenge. All parties in interest, including without limitation the Committee, that fail to act in accordance with the time periods set forth in the preceding sentences of this paragraph shall be, and hereby are, barred forever from commencing a Challenge. The foregoing is without prejudice to any and all of the CIT Parties' legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff in response to any such Challenge, all of which are reserved, and the foregoing shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of initiation of such Challenge. Despite the commencement of a Challenge, CIT's pre-petition claims and Liens shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code § 502(d) and not subject to subordination under Bankruptcy Code § 510 until such time as a final and non-appealable judgment order and judgment entered sustaining such Challenge in favor of the plaintiffs therein. Nothing contained

herein shall limit the Court's ability to fashion an appropriate remedy should the Court determine, by entry of a final and non-appealable order and judgment, a Challenge in favor of the plaintiffs therein. CIT shall have no Carve-Out obligations or obligations with respect to DIP Advances to any person or entity (including without limitation the Committee) or to any Professional of such person or entity with respect to any pending or commenced Challenge, but the Carve-Out and/or DIP Advances (to the extent paid to the Committee's professionals in accordance with the Budget) may be used by the Committee to investigate any matter for which a Challenge may be properly commenced.

22. Nothing in this Order shall preclude the Court from entering a final order containing provisions inconsistent with or contrary to the provisions of this Order; *provided, however*, that CIT shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code § 363(m) and § 364(e), with respect to all DIP Accounts purchased and DIP Advances made by CIT.

23. This Order shall be binding upon and inure to the benefit of CIT, the Debtor and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of Bankruptcy Code. Except as set forth herein with respect to a Challenge and/or the Carve-Out, no rights are created under this Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

24. The terms and conditions of this Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in

interest for such stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Debtor and CIT.

25.     The provisions of this Order and any actions taken pursuant to this Order shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this bankruptcy case from Chapter 11 to Chapter 7 of Bankruptcy Code.  The terms and provisions of this Order, as well as the claims and Liens granted by this Order, shall continue in these or any superseding case under Bankruptcy Code and shall continue notwithstanding any dismissal of the Debtor's bankruptcy case, and such claims and Liens shall maintain their priority as provided by this Order until the Obligations are satisfied in full.  No Proceeds, Cash Collateral or Carve-Out may be used by any party in interest seeking to modify any of the rights granted to CIT under this Order without CIT's prior written consent.

26.     To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Factoring Agreements, this Order is deemed to control and shall supersede the conflicting provision(s).  To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtor to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders.

27.     CIT and the Debtor may amend, modify or supplement any of the provisions of the Factoring Agreements (collectively, a "Modification") without further order of the Court, provided that (a) such Modification is not material, and (b) notice of such Modification is filed with the Court and given to the Committee's and the U.S. Trustee's counsel reasonably prior to the proposed effective date thereof, except that filing with the Court shall not be required with

respect to any Modification that in addition to being non-material is also technical and/or ministerial. The foregoing provisions shall not apply to any forbearance or waiver by CIT with respect to any Events of Default which may have occurred (and the foregoing provisions shall not limit or impair CIT's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtor's agreeing to any Modification that is material.

28.     The Debtor's authorization to obtain DIP Advances, and the Debtor's authorized use of Collateral (including without limitation Cash Collateral) pursuant to this Order, shall be in effect for the period commencing with the Conversion Date through and including the earlier to occur of March 26, 2010 or the effective date of any plan of reorganization of the Debtor (the "Expiration Date"). Notwithstanding anything to the contrary set forth in the preceding sentence, if a final order approving the Application, accompanied by a Budget, both acceptable to CIT in its sole and absolute discretion, has not been entered by the Court by the forty-fifth (45th) day following the date of this Interim Order or such later date as is acceptable to CIT in its sole and absolute discretion (the "Interim Expiration Date"), then the Expiration Date shall be the Interim Expiration Date.

29.     A final hearing with respect to the Application is scheduled for January 6, 2010 at 10:00 a.m. (the "Final Hearing"). The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with the Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon Riker Danzig

Scherer Hyland & Perretti LLP, One Speedwell Avenue, Morristown, NJ 07962-1981, attn: Joseph L. Schwartz, Esq., proposed attorney for the Debtor; (b) Hahn & Hessen LLP, 488 Madison Avenue, 14th Floor, New York, New York 10022, attn: Joshua I. Divack, attorneys for CIT; (c) the Office of the United States Trustee for the Southern District of New York, and, and which objections shall be filed with the Clerk of the Court, in each case so as to be received no later than 4:00 p.m. (Eastern Time) on December 31, 2009.

Dated: New York, New York
      December 10, 2009

                                  *s/ James M. Peck*
                               HONORABLE JAMES M. PECK
                               UNITED STATES BANKRUPTCY JUDGE