**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SIGNATURE APPAREL GROUP, LLC, | Case No. 09-15378 (JMP) |
| Debtor. | |

**FIRST AMENDED DISCLOSURE STATEMENT FOR FIRST AMENDED LIQUIDATING PLAN JOINTLY PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated: ~~April 1,~~ **May 12,** 2010

<table>
<tr><td>

RIKER, DANZIG, SCHERER, HYLAND
 & PERRETTI LLP
Joseph L. Schwartz, Esq.
Kevin J. Larner, Esq.
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800
-and-
500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574

Attorneys for the Debtor

</td><td>

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Michael S. Fox, Esq.
Andrea Fischer, Esq.
Park Avenue Tower
65 East 55th Street
New York, New York  10022
(212) 451-2300

Attorneys for the Official Committee of
Unsecured Creditors

</td></tr>
</table>

## TABLE OF CONTENTS

ARTICLE I.        INTRODUCTION ...................................................................................1
    A.    Holders of Claims and Equity Interests Entitled to Vote................................4
    B.    Voting Procedures.............................................................................................4
    C.    Confirmation Hearing. ......................................................................................6

ARTICLE II.       OVERVIEW OF THE PLAN ...............................................................7
    A.    Summary of Classification and Treatment of Claims and Equity Interests
         Under the Plan...................................................................................................7

ARTICLE III.      GENERAL INFORMATION .................................................................9
    A.    Description of Debtor's Business and History & Events Leading up to
         Bankruptcy Filing. ............................................................................................9
    B.    The Debtor's Secured Indebtedness and Factoring Agreements. ..................10

ARTICLE IV.      HISTORY OF THE DEBTOR'S BANKRUPTCY CASE..............................11
    A.    General. ...........................................................................................................11
    B.    The Debtor's Professionals. ...........................................................................14
    C.    The Committee and Its Professionals. ............................................................14
    D.    Schedules and Statements. .............................................................................15

ARTICLE V.       THE LIQUIDATING PLAN................................................................15
    A.    Introduction.....................................................................................................15
    B.    Administrative Claims and Professional Compensation Claims. ..................17
    C.    Classification and Treatment of Claims and Equity Interests........................18

ARTICLE VI.      EFFECT OF CONFIRMATION OF THE PLAN. ...........................19
    A.    The Responsible Person. .................................................................................19
    B.    Continuing Existence. .....................................................................................20
    C.    Liquidation of Assets ......................................................................................22
    D.    Transfer of Assets. ..........................................................................................22
    E.    Source of Funds. .............................................................................................22
    F.    Retention and Enforcement of Claims. ..........................................................23
    G.    Maintenance of Proceeds and Cash. ..............................................................23
    H.    The Disbursing Agent. ....................................................................................23
    I.    Treatment of Disputed and Contingent Claims. .............................................24
    J.    Post-Effective Date Professional Compensation Claims................................25
    K.    Treatment of Executory Contract...................................................................25
    L.    Modification of the Plan.................................................................................26
    M.    Conditions to Effective Date...........................................................................26
    N.    Retention of Jurisdiction. ................................................................................27
    O.    Revocation or Withdrawal ..............................................................................29
    P.    Injunction ...................................................................................~~29~~**30**
    Q.    Discharge ........................................................................................................30
    R.    Term of Existing Injunctions or Stays ...........................................~~30~~**31**
    S.    Exculpation and Limitation of Liability .........................................................31

## TABLE OF CONTENTS
### (CONTINUED)

| | | |
|---|---|---|
| T. | Severability | 3233 |
| U. | Binding Effect | 3233 |
| V. | Notices | 3233 |
| W. | Right to be Heard | 3435 |
| X. | Closing of Case | 3435 |
| Y. | Section Headings | 3435 |
| Z. | Continuing Viability of Other Orders/Agreements | 35 |
| AA. | Entire Agreement | 35 |
| BB. | Governing Law | 3536 |
| CC. | Failure of Bankruptcy Court to Exercise Jurisdiction | 3536 |

ARTICLE VII.    VOTING REQUIREMENTS ........................................36
A.    Classes Entitled to Vote ..............................................36
B.    Vote Required for Acceptance by Classes of Claims ................3637

ARTICLE VIII.    CONFIRMATION OF THE PLAN ...............................37
A.    Confirmation Hearing ................................................3738
B.    Requirements for Confirmation of the Plan .......................3839

ARTICLE IX.    FINANCIAL INFORMATION ....................................4142

ARTICLE X.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ......................................................42

ARTICLE XI.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ................................................4243
A.    Tax Consequences of Confirmation. ..............................43
B.    Tax Consequences to the Debtor. ................................44
C.    Disclaimer. ...........................................................44

ARTICLE XII.    CONCLUSION AND RECOMMENDATION .....................4345

ii

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AT THIS TIME.  A HEARING TO CONSIDER THE ADEQUACY OF THIS DISCLOSURE STATEMENT UNDER BANKRUPTCY CODE § 1125 HAS BEEN SET BY THE BANKRUPTCY COURT FOR **MAY 13, 2010 AT 10:00 A.M.**  THE DEBTOR AND THE COMMITTEE RESERVE THE RIGHT TO MODIFY OR SUPPLEMENT THIS DISCLOSURE STATEMENT PRIOR TO AND UP TO THE DATE OF SUCH HEARING.

## ARTICLE I

## <u>INTRODUCTION</u>

This disclosure statement (this "<u>Disclosure Statement</u>") is being furnished jointly by Signature Apparel Group, LLC, the debtor and debtor-in-possession in this Chapter 11 Case (the "<u>Debtor</u>"), and the Official Committee of Unsecured Creditors (the "<u>Committee</u>," and collectively with the Debtor, the "<u>Proponents</u>") in connection with the solicitation of votes to confirm the **First Amended** Plan of Liquidation Jointly Proposed by the Official Committee of Unsecured Creditors and the Debtor (the "<u>Plan</u>") pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>").  A copy of the Plan is attached hereto as <u>Exhibit A</u>.[1]

The purpose of this Disclosure Statement is to set forth adequate information: (1) regarding the history of the Debtor, its business, operations, financial conditions and assets and this Chapter 11 Case; (2) concerning the Plan and alternatives to the Plan; (3) advising the Holders of Claims and Equity Interests of their rights under the Plan; (4) assisting the Holders of Claims entitled to vote in making an informed judgment regarding whether they should vote to accept or reject the Plan; and (5) assisting the Bankruptcy Court in determining whether the

Debtor has complied, and the Plan complies, with the provisions of chapter 11 of the Bankruptcy Code.

By Bankruptcy Court Order (the "Disclosure Statement Order," a copy of which is attached hereto as Exhibit B), the Bankruptcy Court approved this Disclosure Statement, in accordance with Bankruptcy Code § 1125, as containing "adequate information" to enable a hypothetical, reasonable investor typical of Holders of Claims against, or Equity Interests in, the Debtor, to make an informed judgment as to whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan.  APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. No solicitation of votes may be made except pursuant to this Disclosure Statement and Bankruptcy Code § 1125.  In voting on the Plan, Holders of Claims entitled to vote should not rely on any information relating to the Debtor and its business, other than that contained in this Disclosure Statement and the Plan and the exhibits hereto and thereto.

THE DEBTOR AND THE COMMITTEE STRONGLY RECOMMEND THAT THE HOLDERS OF CLAIMS IN ALL SOLICITED CLASSES VOTE TO ACCEPT THE PLAN. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN BY EACH HOLDER OF A CLAIM OR INTEREST.  THE PLAN REPRESENTS A LEGALLY BINDING ARRANGEMENT AND SHOULD BE READ IN ITS ENTIRETY, AS OPPOSED TO RELYING ON THE SUMMARY PROVIDED HEREIN.  THIS DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW.  THE DESCRIPTION OF THE PLAN HEREIN IS A

---

[1] Capitalized terms that are not defined in this Disclosure Statement shall have the meanings set forth in the Plan.

4018401.4
4040818.1

SUMMARY ONLY.  HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED ATTACHMENTS IN THEIR ENTIRETY FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS.  THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.  NO STATEMENTS OR INFORMATION CONCERNING THE DEBTOR OR ITS ASSETS OR SECURITIES ARE AUTHORIZED, OTHER THAN THOSE SET FORTH HEREIN.  ANY REPRESENTATIONS MADE IN ORDER TO SECURE AN ACCEPTANCE OF THE PLAN THAT ARE NOT CONTAINED HEREIN ARE TO BE REPORTED TO THE DEBTOR, THE COMMITTEE, THE UNITED STATES TRUSTEE AND THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF BY THE DEBTOR UNLESS OTHERWISE SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE.  THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR AND THE COMMITTEE.  ALL FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT IS UNAUDITED BUT THE DEBTOR HAS MADE REASONABLE EFFORTS UNDER THE CIRCUMSTANCES TO PROVIDE ACCURATE INFORMATION IN THIS DISCLOSURE STATEMENT.  HOLDERS OF CLAIMS ENTITLED TO VOTE SHOULD READ THE DISCLOSURE STATEMENT CAREFULLY AND IN ITS ENTIRETY AND, WHERE POSSIBLE, CONSULT WITH COUNSEL OR OTHER ADVISORS PRIOR TO VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, WHICH SUMMARY IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN.  IF ANY INCONSISTENCY EXISTS BETWEEN THE TERMS AND PROVISIONS OF THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL.  CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE FORWARD LOOKING FORECASTS AND ARE BASED UPON CERTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.

**A.**      **Holders of Claims and Equity Interests Entitled to Vote.**

In this Chapter 11 Case, only Holders of Claims in Class 3 are impaired by the Plan and, therefore, entitled to vote to accept or reject the Plan.  Claims in Class 1 and Class 2 are unimpaired by the Plan and the Holders thereof are conclusively presumed to have accepted the Plan.  Class 4 claimants will receive no distribution and retain no property under the Plan and, therefore, are deemed to have rejected the Plan.

**B.**      **Voting Procedures.**

If you are entitled to vote to accept or reject the Plan, enclosed is a ballot (the "Ballot") for the acceptance or rejection of the Plan and a pre-addressed envelope for the return of the Ballot.  BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3 BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN. Such Holders should read the Ballot carefully and follow the instructions contained therein. Please use only the official Ballot (or Ballots) that accompanies this Disclosure Statement.  If you are the Holder of a Claim in Class 3 and did not receive a Ballot, received a damaged or

4018401.4
4040818.1

illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning this Disclosure Statement, any of the Exhibits hereto, the Plan or the voting procedures in respect thereof, please contact:

> Kevin J. Larner, Esq.
> Riker Danzig Scherer Hyland & Perretti LLP
> One Speedwell Avenue
> P. O. Box 1981
> Morristown, New Jersey 07962-1981
> 973-538-0800

After carefully reviewing this Disclosure Statement and the Exhibits attached hereto, please indicate your vote with respect to the Plan on the enclosed Ballot and return it either by overnight courier or regular mail in the envelope provided. BALLOTS SUBMITTED BY FACSIMILE OR OTHER ELECTRONIC TRANSMISSION WILL NOT BE ACCEPTED AND WILL BE VOID. Voting requirements are explained elsewhere in this Disclosure Statement. PLEASE VOTE AND RETURN YOUR BALLOT TO:

> Kevin J. Larner, Esq.
> Riker Danzig Scherer Hyland & Perretti LLP
> One Speedwell Avenue
> P. O. Box 1981
> Morristown, New Jersey 07962-1981
> 973-538-0800

IN ORDER TO BE COUNTED, BALLOTS MUST BE RECEIVED NO LATER THAN 4:30 P.M. (PREVAILING EASTERN TIME) ON _____, 2010. ANY EXECUTED BALLOTS THAT ARE TIMELY RECEIVED BUT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATE BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN SHALL NOT BE COUNTED.

4018401.4
4040818.1

If you wish to obtain an additional copy of the Plan, this Disclosure Statement or any exhibits to such documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please submit your request to Kevin J. Larner, Esq., at the foregoing address.

Any creditor with a claim to which an objection has been filed may not vote on the Plan unless the claim has been temporarily allowed for voting purposes. Temporary allowance of a claim shall be sought in accordance with the procedures set forth herein and in the Plan. The Debtor and the Committee believe that prompt confirmation and implementation of the Plan is in the best interests of the Debtor, all Holders of Claims and the Debtor's chapter 11 estate.

**C.    Confirmation Hearing.**

In accordance with the Disclosure Statement Order and Bankruptcy Code § 1128, a hearing on confirmation of the Plan (the "Confirmation Hearing") will be held on _____, 2010 at _____ (prevailing Eastern Time), in the courtroom of The Honorable James M. Peck, U.S.B.J., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, to consider confirmation of the Plan. Objections, if any, to confirmation of the Plan must be served and filed so that they are received on or before _____, 2010 at _____ p.m. (prevailing Eastern Time) in the manner set forth in the Disclosure Statement Order. The hearing on confirmation of the Plan may be adjourned from time to time without further notice except for the announcement of the adjourned date and time at the hearing on confirmation or any adjournment thereof.

4018401.4
4040818.1

## ARTICLE II

## OVERVIEW OF THE PLAN

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan.  For a more detailed description of the terms and provisions of the Plan, see Article IV below, entitled "The Liquidating Plan."

Pursuant to the Plan, the Plan Proponents propose an orderly liquidation of the Debtor's remaining assets.  The Plan provides that all funds realized from the collection and liquidation of the Debtor's assets will be paid to Creditors on account of their Claims in accordance with the distribution priorities set forth in the Bankruptcy Code.  The Plan Proponents propose to implement the Plan by appointing a Responsible Person, who, after the Effective Date, on behalf of the Debtor will be responsible for liquidating all of the assets, pursuing all causes of action and causing a Disbursing Agent to make distributions to Creditors in accordance with the terms of the Plan.  Substantially all of the Debtor's operating assets have been sold and reduced to cash.   Under the Plan, holders of Allowed General Unsecured Claims will receive a proportionate share of the beneficial interests of the Available Cash and as such will receive a proportionate share of the Available Cash through one or more distributions.  The percentage recovery will depend upon the amount of Available Cash and the aggregate amount of General Unsecured Claims.

A.      **Summary of Classification and Treatment of Claims and Equity Interests Under the Plan.**

The Plan classifies all Claims and Equity Interests of the Debtor into separate classes (each a "Class").  The following chart summarizes the classification and status of Claims and Equity Interests and the treatments afforded under the Plan.  The Debtor and the Committee are in the process of analyzing the validity of all claims filed in this Chapter 11 Case.  Additionally,

7

the Claims Bar Date has yet to occur.[2]  Until all Claims are filed and the analysis of Claims is complete, the Debtor will not be able to state with certainty any estimated or projected distributions to unsecured creditors.  Additionally, much of the Debtor's remaining assets are causes of action, which are not liquid at this time, and for which the Debtor cannot provide an estimate.  As a result, with respect to Class 3 General Unsecured Claims, the Debtor is unable to project a recovery.

| Class | Claim/ Interest | Treatment of Claim/Interest | Amount of Filed and Scheduled Claims or Interests | Projected Recovery |
|---|---|---|---|---|
| 1 | Priority Non-Tax and Priority Tax Claims | Each Holder of an Allowed Class 1 Priority Non-Tax or Priority Tax Claim, if any, will receive Cash in an amount to such Allowed Class 1 Priority Non-Tax or Priority Tax Claim on the later of (i) the Effective Date, (ii) seven (7) business days after the entry of a Final Order Allowing such Class 1 Priority Non-Tax or Priority Tax Claim, or (iii) the date funds exist sufficient to pay such claims after reserve for unpaid Allowed Administrative Claims and the Reserve for payment of the administrative expenses of the Disbursing Agent. | Scheduled Claims: $14,906.80[3] | The Debtor anticipates that Holders of Allowed Class 1 Claims will receive a distribution of 100%. |
| 2 | Secured Claims of CIT | Each Holder of an Allowed Class 2 Claim, if any, will receive Cash in Cash in an amount to such Allowed Class 2 Claim on the later of (i) the Effective Date, (ii) seven (7) business days after the entry of a Final Order Allowing such Class 1 Priority Non-Tax or Tax Claim, or (iii) the date funds exist sufficient to pay such claims after reserve for unpaid Allowed Administrative Claims, unpaid Allowed Class 1 Claims and the Reserve for payment of the administrative expenses of the Disbursing Agent. | The Proponents estimate that Class 2 Claims total $0.[4] | The Proponents estimate that Class 2 Claims total $0. |
| 3 | General Unsecured Claims | Pro Rata share of the Liquidation Proceeds on the Distribution Date or Dates as and when funds are available as determined in the sole discretion of the Disbursing Agent. | Scheduled Claims: $28,676,703.13 | Unknown[5] |
| 4 | Equity Interests | No distribution or retention of property under the Plan. | -- | -- |

---

[2] Prior to the Confirmation Hearing, the Debtor plans to file a motion with the Bankruptcy Court seeking entry of an Order establishing a Claims Bar Date.

[3] Of this amount, $9,186.63 was paid by the Debtor during the Chapter 11 Case pursuant to the Bankruptcy Court's Order Pursuant to 11 U.S.C. § 105(a) Authorizing Payment of Wages and Benefit to Employees Accrued Prior to Entry of Order For Relief.

[4] During the pendency of the Debtor's Bankruptcy Case, CIT was paid in full on account of the Debtor's obligations to CIT, such that the Proponents believe that CIT's total claim against the Debtor's estate is $0.

[5] Until the Claims Bar Date is established, and all Claims are filed and an analysis of Claims is complete, the Proponents will not be able to state with certainty any estimated or projected distributions on account of General Unsecured Claims.  Additionally, much of the Debtor's remaining assets are causes of action, which are not liquid at this time, and for which the Debtor cannot provide an estimate.  As a result, with respect to Class 3 General Unsecured Claims, the Proponents are unable to projects the amount of recovery.

4018401.4
4040818.1

# ARTICLE III

## GENERAL INFORMATION

**A.    Description of Debtor's Business and History & Events Leading up to Bankruptcy Filing.**

The Debtor was formed in 2005 as a privately owned multi-faceted apparel company. The Debtor designed developed, manufactured, and distributed branded apparel worldwide. From its inception, the Debtor sought to actively acquire brands as well as licensing opportunities.  The Debtor is owned, jointly, by individuals whose names are Christopher Laurita and Joseph Laurita, each of whom have a fifty percent (50%) membership interest in the Debtor.

In or about 2005, the Debtor entered into an exclusive licensing arrangement with Iconix Brand Group, Inc. ("Iconix") to manufacture and distribute apparel bearing "Rocawear Juniors™" branding (the "Rocawear License").  In the months leading up to the Petition Date, and due in large part to the worldwide economic downturn, the Debtor began having difficulty making payments to Iconix on account of the Rocawear License.  As a result, prior to the Petition Date, and pursuant to the terms Rocawear License agreement, Iconix terminated the Rocawear License with the Debtor.

In addition, prior to the Petition Date, the Debtor held a licensing agreement to manufacture and distribute apparel bearing "Artful Dodger™" branding (the "Artful Dodger License").  Due to circumstances similar to those described above, prior to the Petition Date, the Artful Dodger License was also terminated by its owner.

Prior to the termination of the Artful Dodger License and the Rocawear License, the Debtor manufactured apparel under these licenses and sold them the Debtor's retailer customers throughout the United States.  As a result of, among other things, the downturn in the economy, the financial difficulties of certain of the Debtor's largest customers and the termination of the

9

Debtor's licensing agreements, in the months prior to the Petition Date, the Debtor's revenues substantially decreased, and the Debtor was unable to meet certain of its operating expenses.

**B.**     **The Debtor's Secured Indebtedness and Factoring Agreements.**

The Debtor's primary pre-petition secured creditor was CIT, which has provided the Debtor with a secured factoring and financing facility, pursuant to, among other things, an Amended and Restated Factoring Agreement dated January 5, 2007, an Amended and Restated Inventory Security Agreement dated January 5, 2007 and an Amended and Restated Equipment Security Agreement dated January 26, 2007 (as amended, modified and/or supplemented to date, collectively, the "Factoring Agreements").

Pursuant to the Factoring Agreements, (i) the Debtor sold, and CIT purchased, the Debtor's accounts as valid and true purchases and sales thereof, (ii) CIT made loans, advances, and other financial accommodations to or for the benefit of the Debtor and (iii) the Debtor's indebtedness and/or obligation to CIT under the Factoring Agreements (the "Obligations") were secured by liens and/or security interests in substantially all of the Debtor's assets (the "Collateral").    Additionally, pursuant to the Factoring Agreements, the Debtor paid CIT a factoring commission of 0.5% of the gross face amount of the accounts factored with CIT.

During the pendency of the Debtor's bankruptcy case, the Debtor paid CIT in full on account of its obligations to CIT, such that, as of the date of this Disclosure Statement, the Debtor believes that CIT is owed $0.

# ARTICLE IV

## HISTORY OF THE DEBTOR'S BANKRUPTCY CASE

**A.**     **General.**

    1.     <u>The Involuntary Filing and Events During the Involuntary Gap Period.</u>

On September 4, 2009 (the "<u>Petition Date</u>"), three of the Debtor's creditors, Hitch & Trail Inc., Talful, Ltd and Harvestway (China) Limited filed an involuntary Chapter 7 bankruptcy petition against the Debtor.

On or about September 28, 2009, the Debtor filed with the Bankruptcy Court a motion for entry of an order modifying the automatic stay to permit the Debtor to factor accounts receivable and obtain post-petition financing from CIT for payment of critical gap period expenses (the "<u>Gap Financing Motion</u>").  Through the Gap Financing Motion, the Debtor sought authority to obtain financing for certain specific expenses during the involuntary gap period.  On or about October 1, 2009, the Bankruptcy Court entered an Order granting the Gap Financing Motion.

Thereafter, on October 2, 2009, the Court entered a Stipulation and Order Extending the Time for Signature Apparel Group, LLC to Respond to the Involuntary Petition, which extended the Debtor's time to respond to the Involuntary Petition to October 13, 2009.  On October 16, 2009, the Court entered a second Stipulation and Order Extending the Time for Signature Apparel Group, LLC to Respond to the Involuntary Petition, which extended the Debtor's time to respond to the Involuntary Petition to October 30, 2009.

    2.     <u>Entry of the Order for Relief and Motion to Convert.</u>

On November 5, 2009, the Bankruptcy Court entered an order for relief (the "<u>Order for Relief</u>"), thereby causing the Debtor's bankruptcy case to proceed as a chapter 7 bankruptcy case.

11

4018401.4
4040818.1

Thereafter, the Debtor filed a motion seeking to convert the bankruptcy case to a case under chapter 11 of the Bankruptcy Code.  By Order dated November 13, 2009 (the "Conversion Date"), the Bankruptcy Court converted the Debtor's chapter 7 case to a Chapter 11 case.  Since the Conversion Date, the Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.    "First Day" Orders.

Following the Conversion Date, the Debtor sought entry by the Bankruptcy Court of several "First Day" orders to assist with the administration of the Debtor's chapter 11 case. Thereafter, the Bankruptcy Court entered several "First Day" Orders, which included:

- Order Pursuant to 11 U.S.C. §§ 105(A) and 331 and Fed. R. Bankr. P. 2016(a) Establishing Procedures For Monthly Compensation and Reimbursement of Expenses Of Professionals;

- Order Pursuant to 11 U.S.C. § 105(a) Authorizing Payment of Wages and Benefit to Employees Accrued Prior to Entry of Order For Relief;

- Order Pursuant to 11 U.S.C. §§ 327(a) And 328 and Fed. R. Bankr. P. 2014 Authorizing Employment of Riker Danzig Scherer Hyland & Perretti, LLP as Attorneys For Debtor;

- Order Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 and 2016 Authorizing Employment of Einbinder & Dunn, LLP as Special Counsel For Debtor; and

- Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 Authorizing Employment of Anchin, Block & Anchin, LLP As Accountants For Debtor.

4.    Cash Collateral and Financing Motion.

In order to finance its operations during the pendency of its bankruptcy case, the Debtor required debtor-in-possession funding from CIT.  As a result, on or about November 25, 2009, the Debtor filed with the Bankruptcy Court an Application in Support of Debtor's Motion For Interim and Final Orders (I) Authorizing the Debtor to Factor Accounts Receivable and Obtain Financing From the CIT Group/Commercial Services, Inc.; (II) Scheduling a Final Hearing Date; and (III) Granting Other Related Relief (the "Financing Motion").  Through the Financing

4018401.4
4040818.1

Motion, the Debtor sought, in essence, to continue its pre-petition and involuntary gap period factoring arrangement with CIT.

By Order dated December 10, 2009, the Bankruptcy Court approved the Financing Motion on an interim basis, and by Order dated January 13, 2010, the Bankruptcy Court approved the Financing Motion on a final basis.

5.    <u>Other Motions.</u>

i)    <u>Motion to Reject Equipment Leases.</u>  On or about January 26, 2010, the Debtor filed a motion with the Bankruptcy Court seeking to reject two (2) office equipment leases.  By Order dated February 9, 2010, the Bankruptcy Court granted the Debtor the relief requested in the motion.

ii)    <u>Motion to Approve Compromise with Debtor's Sublandlord.</u>  On or about January 27, 2010, the Debtor filed a motion with the Bankruptcy Court seeking entry of an order approving a settlement and compromise between the Debtor and its sublandlord, Paul Davril, Inc. ("<u>Davril</u>"), through which the Debtor would reject its lease agreement with Davril and make a payment to Davril on account of Davril's claims against the Bankruptcy Estate, and Davril would agree to release the Bankruptcy Estate from all claims.  By Order dated February 18, 2010, the Bankruptcy Court granted the motion and the settlement between the Debtor and Davril was approved and effectuated.

iii) <u>Motion to Reject Non-Residential Real Property Lease.</u>  On or about February 11, 2010, the Debtor filed a motion with the Bankruptcy Court seeking entry of an order permitting the Debtor to reject a non-residential real property lease in exchange for a release of claims from the landlord.  By Order dated March 26, 2010, the Bankruptcy Court granted the motion.

4018401.4
4040818.1

B.    **The Debtor's Professionals.**

To assist the Debtor in carrying out its duties as a debtor-in-possession and to otherwise represent its interests in the bankruptcy case, with authorization from the Bankruptcy Court, the Debtor employed Riker Danzig Scherer Hyland & Perretti, LLP as bankruptcy counsel, Einbinder & Dunn, LLP as special real estate counsel, and Anchin, Block & Anchin LLP as accountants.

C.    **The Committee and Its Professionals.**

On December 3, 2009, the Office of the United States Trustee appointed the Committee in the Debtor's case to represent the interests of the Debtor's unsecured creditors in the bankruptcy case. Following its formation, the Debtor consulted with the Committee concerning the administration of the bankruptcy case and the issues arising in the bankruptcy case. The Committee, through its professionals, has participated actively, together with the Debtor's management and professionals in, among other things, negotiating the terms of the Plan.

The members of the Committee and its professionals are as follows:

*Committee Members:*

Iconix Brand Group, Inc.
1450 Broadway, Third Floor
New York, New York 10018

Harvestway (China) Limited
Unit 2, 10/F, Kingsford Industrial Centre
No. 13 Wang Hoi Road
Kowloon Bay, Hong Kong, China

Talful Ltd.
8/F, Gold King IND., Bldg
35-41 Tai Lin Pai Road
Kwai Chung, N.T.
Hong Kong, China

*Committees' Counsel:*

Olshan Grundman Frome Rosenzweig
& Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, New York  10022

*Committees' Financial Advisors:*

Friedman, LLP
1700 Broadway
New York, NY 10019

4018401.4
4040818.1

**D.**     **Schedules and Statements.**

On November 20, 2009, the Debtor filed its schedules of assets and liabilities and statement of financial affairs with the Bankruptcy Court. On December 29, 2009 and February 23, 2010, the Debtor filed amended schedules of assets and liabilities, to correct and clarify certain information included in, or omitted from, the original schedules and statements (as amended, the "Schedules").

**ARTICLE V**

**THE LIQUIDATING PLAN**

**A.**     **Introduction.**

The following summary and other descriptions in this Disclosure Statement are qualified in their entirety by reference to the provisions of the Plan and its exhibits, a copy of which is annexed hereto as Exhibit A. Each Holder of a Claim or Equity Interest is urged to carefully review the terms of the Plan. In the event of an inconsistency between the provisions of the Plan and the summary contained herein, the terms of the Plan shall govern. Moreover, all capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings set forth in the Plan.

In general, a chapter 11 plan (i) divides claims and equity interests into separate classes, (ii) specifies the property that each class is to receive under the Plan and (iii) contains other provisions necessary to the reorganization or liquidation of the debtor. Under the Bankruptcy Code, "claims" and "equity interests" are classified rather than "creditors" and "shareholders" because such entities may hold claims or equity interests in more than one class. For purposes of

15

this Disclosure Statement, the term "Holder" refers to the holder of a Claim or Interest, respectively, in a particular Class under the Plan.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtor are altered, modified or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holders of such Claim or Interest are entitled to vote in favor or against the Plan.

A chapter 11 plan may specify that certain classes of claims or equity interests are either to be paid in full upon effectiveness of the Plan or are to remain unchanged by the Plan. Such classes are referred to as "unimpaired," and because of such favorable treatment the holders in such classes are deemed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of claims or equity interests in such classes. A chapter 11 plan also may specify that certain classes will not receive any distribution or property or retain any claim against a debtor. Such classes are deemed to have rejected the Plan and, therefore, need not be solicited to vote to accept or reject the Plan.

Here, pursuant to the Plan, the Proponents propose an orderly liquidation of the Debtor's remaining assets. The Plan provides that all funds realized from the collection and liquidation of the Debtor's assets will be paid to Creditors on account of their Claims in accordance with the distribution priorities set forth in the Bankruptcy Code. The Proponents propose to implement the Plan by appointing a Responsible Person, who, after the Effective Date, on behalf of the Debtor, will be responsible for liquidating al of the assets, pursuing all causes of action and causing a Disbursing Agent to make distributions to Creditors in accordance with the terms of the Plan.

4018401.4
4040818.1

**B.**    **Administrative Claims and Professional Compensation Claims.**

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are unclassified claims, not considered Impaired and not entitled to vote on the Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.  These non-voting Claims shall be treated separately as unclassified Claims as set forth in the Plan.

6.    Administrative Expense Claims.

Pursuant to § 3.1 of the Plan, except to the extent that any entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount to such Allowed Administrative Expense Claim on the later of the Effective Date and seven (7) business days after the entry of a Final Order Allowing such Administrative Expense Claim, or as soon thereafter as is practicable.

Prior to the Confirmation Hearing, the Debtor intends to file a motion requesting that the Bankruptcy Court enter an order establishing a bar date for filing Administrative Expense Claims (the "Administrative Expense Claims Bar Date") and establishing notice procedures with respect to the Administrative Expense Claims Bar Date.  If the Bankruptcy Court enters an order setting an Administrative Expense Claims Bar Date, then the Plan provides that any Administrative Expense Claims that is not timely filed on or before the Administrative Expense Claims Bar Date shall be forever barred and shall not be enforceable against the Bankruptcy Estate.

7.    Statutory Fees.

All unpaid fees due and payable under 28 U.S.C. § ~~1930~~**1930, including any interest thereon,** shall be paid as provided in § 5.2 of the Plan, as such fees arise prior to and after the Effective Date until a Final Decree is entered in the Chapter 11 Case.

4018401.4
4040818.1

8.    Professional Compensation Claims.

Pursuant to § 3.2 of the Plan, any Person seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code §§ 327, 328, 330, 331, 503(b) and 1103 for services rendered prior to the Effective Date must file and serve pursuant to the Bankruptcy Code and applicable rules, a final Fee Application no later than forty-five (45) days after the Confirmation Date.  Failure to timely file a final Fee Application shall result in the Professional Compensation Claim being forever barred and discharged.

Except to the extent that any entity entitled to payment of an Allowed Professional Compensation Claim agrees to a different treatment, each Holder of an Allowed Professional Compensation Claim shall receive Cash in an amount to such Allowed Professional Compensation Claim on the later of the Effective Date and seven (7) business days after the entry of a Final Order Allowing such Professional Compensation Claim, or as soon thereafter as is practicable.

**C.    Classification and Treatment of Claims and Equity Interests.**

The Plan divides the Claims against, and the Equity Interests in, the Debtor into the following Classes and provides the following treatment for each Class:

1.    Treatment of Class 1 (Priority Non-Tax and Priority Tax Claims).

Each Holder of an Allowed Class 1 Priority Non-Tax or Priority Tax Claim, if any, will receive Cash in an amount to such Allowed Class 1 Priority Non-Tax or Priority Tax Claim on the later of (i) the Effective Date, (ii) seven (7) business days after the entry of a Final Order Allowing such Class 1 Priority Non-Tax or Priority Tax Claim, or (iii) the date funds exist sufficient to pay such claims after reserve for unpaid Allowed Administrative Claims and the reserve for payment of the administrative expenses of the Disbursing Agent.

4018401.4
4040818.1

2.    Treatment of Class 2 (Secured Claims of CIT).

Each Holder of an Allowed Class 2 Claim, if any, will receive Cash in Cash in an amount to such Allowed Class 2 Claim, if any, on the Effective Date.

3.    Treatment of Class 3 (General Unsecured Claims).

Each Holder of an Allowed Class 3 General Unsecured Claim will receive its Pro Rata share of the Available Cash on the Distribution Date or Dates as and when funds are available as determined in the sole discretion of the Disbursing Agent.

4.    Treatment of Class 4.

The Claims of Class 4, the equity interests in the Debtor, are impaired.  No interest will be retained by this Class.  Class 4 shall not receive any distributions under the Plan.

## ARTICLE VI

## EFFECT OF CONFIRMATION OF THE PLAN.

**A.    The Responsible Person.**

5.    Powers of the Responsible Person.

After the Effective Date, the Responsible Person will be empowered, on behalf of the Debtor, to (i) serve as the sole officer and director of the Debtor; (ii) take all steps and execute all instruments and documents necessary to effectuate the disbursements to be made under the Plan; (iii) cause the Disbursing Agent to make Distributions contemplated by the Plan; (iv) comply with the Plan and the obligations thereunder; (v) employ, retain, or replace professionals to represent the Debtor with respect to its responsibilities or otherwise effectuate the Plan; (vi) enforce and prosecute claims, interest, rights and privileges of the Debtor; (vii) file the appropriate tax returns; (viii) review and object to the allowance of claims; and (ix) exercise such

4018401.4
4040818.1

other powers as may be vested in it pursuant to order of the Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

**At least five (5) days prior to the Confirmation Hearing, the proposed Responsible Person shall file a certification with the Bankruptcy Court providing that he does not hold or represent any interest adverse to the interests of the Debtor's bankruptcy estate.**

6.      Duties of the Responsible Person.

After the Effective Date, the Responsible Person will serve as the sole officer and director of the Debtor, causing the Disbursing Agent to make the Distributions under the Plan and take or not take any action which the Responsible Person deems to be in furtherance thereof, including, from the date of its appointment, making payments and conveyances and effecting other transfers necessary in furtherance of the Plan.  From and after the Effective Date, the Responsible Person will pay, among other things, all U.S. Trustee Fees**, along with any applicable interest thereon,** and file the required **quarterly post-confirmation status** reports until such time as the Court enters a final decree closing the Chapter 11 Case.

7.      Compensation of the Responsible Person.

The Responsible Person will receive an amount per month to be determined prior to the Confirmation Hearing.  In addition, upon written approval by both (i) counsel to the Debtor and (ii) the Committee, the Responsible Person will receive reimbursement of reasonable expenses incurred in connection with performing his/her duties in accordance with the provisions of the Plan, subject to the Debtor's requirements and current policies with respect to the reporting and documenting of such expenses.

**B.      Continuing Existence.**

1.      From and after the Effective Date, the Debtor, through the Responsible Person, shall continue in existence solely for the purpose of: (i) winding up its affairs as expeditiously as

4018401.4
4040818.1

reasonably possible, (ii) liquidating, by conversion to Cash or other methods, of any remaining assets of the Estate, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, the prosecution of the Debtor's Actions in conjunction with the marshalling of the Debtor's assets, (iv) reviewing and objecting to the allowance of Claims; (v) resolving Disputed Claims, (vi) administering the Plan, and (vii) filing appropriate tax returns.

2.      From and after the Effective Date, Anthony Labrosciano or his successor will be the sole director, officer and Responsible Person of the Debtor (and all bylaws, articles or certificates of incorporation, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment) and will serve in such capacity through the earlier of the date of the Debtor is dissolved in accordance with the Plan and the date Anthony Labrosciano resigns, is terminated or otherwise unable to serve; provided, however that, in the event that Anthony Labrosciano resigns, is terminated by court order or unable to serve as a director, then the Committee, in consultation with Debtor's counsel, shall have the right to select Anthony Labrosciano's successor who shall be appointed the sole director, officer and Responsible Person of the Debtor and shall serve in such capacity until the Debtor is dissolved in accordance with the Plan.  In addition, upon written approval by both (i) counsel to the Debtor and (ii) the Committee, the Responsible Person will receive reimbursement of reasonable expenses incurred in connection with performing his/her duties in accordance with the provisions of the Plan, subject to the Debtor's requirements and current policies with respect to the reporting and documenting of such expenses.

3.      Upon the distribution of all assets of the Estate pursuant to the Plan and the filing by or on behalf of the Debtor of a certification to that effect with the Bankruptcy Court,  **and**

4018401.4
4040818.1

**after entry of a final decree by the Bankruptcy Court,** the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Debtor shall file with the appropriate state authority a certificate of dissolution. From and after the Effective Date, the Debtor shall not be required to file any document, or take any other action, to withdraw its business operation from any states in which the Debtor was previously conducting its business operations.

**C.     Liquidation of Assets**

On and after the Confirmation Date, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon or otherwise dispose of at a public or private sale any of the Debtor's remaining assets for the purpose of liquidating and converting such assets to cash, making distributions and fully consummating the Plan.

**D.     Transfer of Assets.**

Pursuant to the Confirmation Order, any and all funds currently held by CIT on the Debtor's behalf shall be transferred to the Debtor. Any remaining balance of the Carveout shall be segregated by the Debtor and shall be used to pay Administrative Professional Fee Claims, as required by the Bankruptcy Court's Orders dated December 10, 2009 and January 13, 2010. On the Effective Date, and in accordance with the Confirmation Order, the Assets will be irrevocably transferred and assigned to the Debtor. Without limiting the generality of the foregoing, on the Effective Date, all Derivative Actions held by the Committee will be transferred and assigned to the Debtor. The Disbursing Agent will pay, or otherwise make distributions on account of, all Allowed Claims against the Debtor in accordance with the terms of the Plan.

4018401.4
4040818.1

**E.**     **Source of Funds.**

The Plan shall be funded by: (i) Available Cash on the Effective Date, and (ii) funds available after the Effective Date, from among other things, any payments received by the Debtor from (x) liquidation of the Debtor's remaining assets, (y) the prosecution and enforcement of the Debtor's Actions and (z) any release of fund from Disputed Claims Reserve Fund.

**F.**     **Retention and Enforcement of Claims.**

Pursuant to section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Debtor shall retain and may enforce any and all claims of the Debtor or the Estate, including, without limitation, claims against governmental units, the prosecution of avoidance actions in conjunction with the marshaling of the Debtor's assets, and the Debtor's Actions.

**G.**     **Maintenance of Proceeds and Cash.**

All Cash received by or on behalf of the Debtor will be maintained in interest-bearing account(s), deposits or investments, including, without limitation, those provided for under section 345 of the Bankruptcy Code, for the benefit of Entities entitled to Distributions and Payments under the Plan.

**H.**     **The Disbursing Agent.**

Any Disbursing Agent shall be bonded in connection with the Disbursing Agent's obligations under the Plan.   The fees, expenses, and any bond premiums incurred by the Disbursing Agent in connection with its duties hereunder shall not be paid, in any part, from the Disbursing Agent Reserve or the Disputed Claims Reserve Fund.  Provided that the proposed Disbursing Agent provides evidence of a bond ten days prior to the Confirmation Hearing, the appointment of the Disbursing Agent will be approved by the Bankruptcy Court in accordance with the Plan and confirmed by the Bankruptcy Court as part of the Confirmation Order.  In the

23

event the Disbursing Agent resigns, is removed or otherwise is rendered unable or is unwilling to perform his/her duties and responsibilities as agent under the Plan, then the Committee, in consultation with counsel for the Debtor, shall, in accordance with the terms of the Plan, and subject to a Final Order, designate and appoint a successor agent**, which successor agent shall provide evidence of the necessary bond and his disinterestedness prior to said appointment,** and file notice of such successor with the Bankruptcy Court.

**At least five (5) days prior to the Confirmation Hearing, the proposed Disbursing Agent shall file a certification with the Bankruptcy Court providing that he does not hold or represent any interest adverse to the interests of the Debtor's bankruptcy estate.**

**I.     Treatment of Disputed and Contingent Claims.**

1.     <u>Disputed Claims</u>.  No payments or other distributions will be made to Holders of Disputed Claims unless and until such Claims are Allowed Claims, pursuant to a Final Order. No distribution or payment shall be made to any Holder of an Allowed Claim who is also a potential defendant in an Avoidance Action or any other cause of action. If a Claim is not an Allowed Claim on the Effective Date or when payment is otherwise due under the Plan, payment of the Claim will be made on the Distribution Date after which the Claim becomes an Allowed Claim or on such earlier date as the Disbursing Agent deems appropriate, in either case, from the Disputed Claims Reserve Fund otherwise attributable to such Claim.  At the time of any payments of other distributions to Holders of Allowed Claims in any Class, an amount sufficient to have paid each Holder of a Disputed Claim in such Class its Pro Rata share of such Distribution, calculated as though such Disputed Claim were an Allowed Claim, shall be reserved for the potential benefit of the Holder of the Disputed Claim, and thereafter distributed as set forth above, but in the event that a creditor asserts duplicative, overlapping, or multiple Claims, the total amount reserved shall not exceed the total amount subject to distribution to such

4018401.4
4040818.1

Creditor on account of such Claims.  Further, to the extent necessary to insure that the amount reserved for a Disputed Claim is sufficient, any amount held or reserved on account of one Claim of a Creditor shall also be deemed to be held or reserved for all Claims of that Creditor. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed by the Disbursing Agent, a Creditor who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will not receive a Distribution, nor accrue interest thereon, until such dispute is resolved by settlement or Final Order.

**2.    Claims Objection Deadline.  The Debtor shall have one (1) year from the Effective Date of the Plan to object to the allowance of Claims.**

**3.**    ~~2.~~Contingent Claims.  Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan.  The Holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

**J.    Post-Effective Date Professional Compensation Claims.**

Any allowable, authorized or otherwise permissible Professional Compensation Claims incurred by any Chapter 11 Professionals after the Confirmation Date will be treated as part of the fees and expenses of administering the Estate and will be paid by the Disbursing Agent.

**K.    Treatment of Executory Contract.**

1.    Assumption/Rejection of Executory Contracts.  All Executory Contracts not otherwise heretofore assumed by the Debtor will be rejected as of the Confirmation Date.

2.    Rejection Claims Bar Date. Every Claim asserted by a Creditor arising from the rejection of an Executory Contract by the Plan must be filed with the Bankruptcy Court no later

4018401.4
4040818.1

than the first Business Day which is thirty (30) days after the Effective Date; provided, however, that nothing contained herein or in the Plan shall be deemed or construed as an extension of the date by which Creditors whose Executory Contracts were rejected by prior order of the Bankruptcy Court had to file proofs of claim stemming from the Debtor's rejection of those Executory Contracts. Every such Claim that is timely filed will be treated under the Plan as a Class 3 General Unsecured Claim, except to the extent such Creditor received a pre-petition security deposit such Creditor shall be required to apply said security towards its Claim. However, nothing herein shall be construed as the Debtor's waiver or acquiescence to the allowance of such claim. The Debtor specifically preserves all of its rights and defenses to such Claim as well as the application of any such security deposit. Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

**L.**　　**Modification of the Plan**

To enforce the provisions of the Plan, the Plan may be modified by the Debtor from time to time in accordance with, and pursuant to, Bankruptcy Code section 1127 to cover unanticipated events. The Plan may be modified by the Debtor at any time before the Effective Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, and the Debtor has complied with Bankruptcy Code section 1125.

**M.**　　**Conditions to Effective Date.**

1.　　Conditions to Occurrence of Effective Date.

Each and all of the following are conditions to the Plan becoming effective, and must be satisfied fully or waived by the Debtor:

4018401.4
4040818.1

i)  the Confirmation Order has been entered by the Bankruptcy Court and has become a Final Order;

ii)  the Responsible Person has accepted, in writing, the terms of his/her service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

iii) the Disbursing Agent has accepted, in writing, the terms of his/her service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

iv) the Disbursing Agent has provided the bond required in the Confirmation Order; and

v)  the Disbursing Agent has been established.

2.    Waiver of Conditions.

The Debtor, in its sole discretion, may waive the Final Order condition in subpart (a) above at any time from and after the Confirmation Date.  In that event, the Debtor will be entitled to render any or all of its performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

N.    **Retention of Jurisdiction.**

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

1.    In General.    The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Responsible Person or any other party-in-interest entitled to proceed in that

4018401.4
4040818.1

manner.  As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Professional Compensation Claims.

        2.      <u>Plan Disputes and Enforcement</u>.  The Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provisions of the Plan. The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan and any and all documents relating to the Plan.  The Bankruptcy Court also will retain jurisdiction over any matter relating to the implementation and/or consummation of the Plan.

        3.      <u>Disbursing Agent/Responsible Person</u>.  Without limiting the generality of the foregoing section  entitled "Plan Disputes and Enforcement" and notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Estate after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, any entity's obligations incurred in connection herewith, including without limitation, any action against the Disbursing Agent or the Responsible Person or any or all of their professionals.

        4.      <u>Further Orders.</u>  The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof.  In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

4018401.4
4040818.1

5.      <u>Sale of Assets.</u>  The Bankruptcy Court will retain jurisdiction to authorize and approve any sales of the Debtor's Assets free and clear of all Liens, claims, interests, or encumbrances in accordance with the terms of the Plan.

6.      <u>Governmental Units or Regulatory Agencies.</u>  The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed or threatened by any state, federal or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtor.

7.      <u>Final Decree.</u>  The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Chapter 11 Case.

8.      <u>Appeals.</u>  In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to consummate the Plan,

9.      <u>Executory Contracts.</u>  The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding the determination of a contract as an Executory Contract, assumption or rejection of any Executory Contracts and any and all Claims arising therefrom.

10.     <u>Claims and Causes of Action.</u>  The Bankruptcy Court will retain jurisdiction: (a) to hear and determine any claim or cause of action arising in or related to the Chapter 11 Case; and (b) to adjudicate any causes of action or other proceedings currently pending or which may be commenced by the Responsible Person after the Effective Date or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of the Debtor's Actions,

4018401.4
4040818.1

the Other Actions and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or

may be pertinent to the Chapter 11 Case and which the Responsible Person may deem

appropriate to commence and prosecute in support of implementation of the Plan.

**O.    Revocation or Withdrawal**

The Plan may be revoked or withdrawn by the Debtor and the Committee prior to the

Confirmation Date.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the

Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to

constitute a waiver or release of any claims by the Debtor or any other Entity or to prejudice in

any manner the rights of the Debtor or any other Entity in an further proceedings involving the

Debtor.

**P.    Injunction**

Except as otherwise expressly provided in the Plan, all Entities who have held, hold or

may hold Claims or Interests are permanently enjoined, from and after the Effective Date, from:

(i) commencing or continuing in any manner any action or other proceeding of any kind on any

such Claim or Interest against the Debtor or the Bankruptcy Estate; (ii) the enforcement,

attachment, collection or recovery by any manner or means of any judgment, award, decree or

order against the Debtor or the Bankruptcy Estate; (iii) creating, perfecting, or enforcing any

encumbrance of any kind against the Debtor or the Bankruptcy Estate, the Liquidating Trust or

the Assets of the Liquidating Trust; and (iv) asserting any right of setoff, subrogation or

recoupment of any kind against any obligation due from the Debtor or against the property of the

Debtor, the Bankruptcy Estate, the Liquidating Trust or the Assets of the Liquidating Trust with

respect to any such Claim or Interest.

4018401.4
4040818.1

**Q.    Discharge**

As provided in Bankruptcy Code § 1141(d)(3), the Plan does not grant the Debtor a discharge.  Notwithstanding the foregoing, except as otherwise provided herein, (1) the rights afforded in the Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge and release of such Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, or any of its Assets or properties, and (2) all Persons and Entities shall be precluded from asserting against the Debtor, or any of its Assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, except as otherwise provided in the Plan.

**R.    Term of Existing Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to Bankruptcy Code §§ 105, 362 or 524, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

**S.    Exculpation and Limitation of Liability**

To the extent allowed by Section 1125(e) of the Bankruptcy Code, and without prejudice to the rights of the Disbursing Agent to the extent set forth in this Section, neither the Debtor, its officers or directors, the Committee and its members (solely in their capacity as members of the Committee) nor any of the Chapter 11 Professionals ("Released Persons") shall have or incur any liability to any Holder of a Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates or any of their successors or assigns, for any act or omission occurring after the Petition Date and in

31

connection with, relating to, or arising out of the Chapter 11 Case, formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, Confirmation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for their **criminal conduct,** bad faith, willful malfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing**, ultra vires acts** or breach of fiduciary duty.  The foregoing release and exculpation of the members of the Committee as set forth in this Section shall not release each such person from any liability arising from any act or omission taken by such person in its individual capacity and/or claim or cause of action against such person in its individual capacity (and not in its capacity as a member of the Committee).  **Nothing in the Plan shall limit the liability of the Chapter 11 Professionals to their respective clients, including pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.**  The Debtor and its Estate are deemed to release each person exculpated under this Section from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to or arising out of the Chapter 11 Case; provided, however, that nothing herein shall be deemed a release or waiver of (i) any claims or causes of action against the Debtor's officers or directors for actions and events prior to the Petition Date or (ii) any claims or causes of action against the Debtor's officers or directors under Chapter 5 of the Bankruptcy Code for actions and events after the Petition Date.  In all respects, the Debtor, Disbursing Agent and each of their respective members, officers, directors, trustees, employees, advisors and agents shall be entitled to rely upon advice of counsel with respect to their duties and responsibilities under the Plan.

**Nothing in the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including,**

4018401.4
4040818.1

**without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of the Released Persons, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Persons referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Persons referred to herein.**

**T.    Severability**

If the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of the Plan..

**U.    Binding Effect**

The rights, benefits and obligations conferred on any Person by the Plan shall be binding upon, and inure of the benefit of the executors, successors, heirs and assigns of and any Persons claiming an interest in any Asset through such Person.

4018401.4
4040818.1

**V.**     **Notices**

Any notices, requests and demands to or upon the Debtor, the Committee, the

Responsible Person or the Disbursing Agent to be effective shall be in writing, including by

facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have

been duly given or made when actually delivered to the following or, in the case of notice by

facsimile transmission, when received by the following and telephonically confirmed, addressed

as follows or to such other addresses as filed with the Bankruptcy Court.

**If to the Debtor:**

RIKER, DANZIG, SCHERER, HYLAND &
PERRETTI LLP
Joseph L. Schwartz, Esq.
Kevin J. Larner, Esq.
Headquarters Plaza, One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
Telephone:  (973) 538-0800
Facsimile:  (973) 583-1984

**If to the Responsible Person:**

_____
_____
_____
_____
_____
_____
Telephone:  _____
Facsimile:  _____

**If to the Disbursing Agent:**

_____
_____
_____
_____
_____
_____

4018401.4
4040818.1

Telephone:  _____
Facsimile:  _____

**If to the Committee:**

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP
Michael S. Fox, Esq.
Andrea Fischer, Esq.
Park Avenue Tower
65 East 55th Street
New York, New York  10022
(212) 451-2300

**If to the US Trustee:**

Nazar Khodorovsky
Office of the United States Trustee
33 Whitehall Street, Suite 2200
New York, NY 10004
Telephone:  (212) 510-0500
Facsimile:  (212) 668-2255

**W.**    **Right to be Heard**

Each of the Responsible Person, the Disbursing Agent, the Debtor and the Committee

shall have the right to bring any dispute between them to the Bankruptcy Court for adjudication.

**X.**    **Closing of Case**

At such time as the Estate has been fully administered (i.e., when all things requiring

action by the Responsible Person and the Disbursing Agent have been done, and the Plan has

been substantially consummated) and in all events within sixty (60) days after the Final

Distribution Date, the Disbursing Agent will file an application for Final Order showing that the

Estate has been fully administered.  The Disbursing Agent will file an application for Final Order

upon notice **of presentment** to the United States Trustee, after which an order approving the

Disbursing Agent's final report may be entered.   None of the filings contemplated in this

4018401.4
4040818.1

paragraph, however, shall in any way delay the Disbursing Agent's ability to request entry of the final decree by the Bankruptcy Court.

**Y.    Section Headings**

The section headings contained in the Plan and the Disclosure Statement are for reference purposes only and shall not affect the meaning or interpretation of the Plan.

**Z.    Continuing Viability of Other Orders/Agreements**

Except to the extent expressly modified by the Plan or the Asset Purchase Agreement, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the debtor and its creditors shall continue in full force and effect.

**AA.    Entire Agreement**

Except to the extent incorporated herein by reference, the Plan ~~supercedes~~**supersedes** all prior discussions, understandings, agreements and documents pertaining or relating to any subject matter of the Plan.  In the event of a conflict between the terms of the Plan and the Sale Order or Asset Purchase Agreement, the terms of the Sale Order and Asset Purchase Agreement shall govern.

**BB.    Governing Law**

Except to the extent that the Bankruptcy Code is inapplicable, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York.

**CC.    Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including any

4018401.4
4040818.1

of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction

by any other court of competent jurisdiction with respect to such matter.

## ARTICLE VII

## VOTING REQUIREMENTS

**A.**    **Classes Entitled to Vote**

Subject to the provisions of the Disclosure Statement Order, any Holder of a Claim

against the Debtor as of the Petition Date in Class 3, which Claim has not been Disallowed by

order of the Bankruptcy Court and no objection has been filed to such Claim, shall be entitled to

vote to accept or reject the Plan if: (i) such Holder's Claim has been scheduled by the Debtor

(and such Claim is not scheduled as disputed, contingent or unliquidated) or (ii) such Holder has

filed a proof of claim on or before the Bar Date.

Any Holder of an Interest in the Debtor is not entitled to vote to accept or reject the Plan

because Class 4 is deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g).

Unless otherwise permitted in the Plan, the Holder of any Disputed Claim is not entitled

to vote with respect to such Disputed Claim, unless the Bankruptcy Court, upon application by

such Holder, prior to the Confirmation Hearing, temporarily allows such Disputed Claim for the

limited purpose of voting to accept or reject the Plan.  A vote on the Plan may be disregarded if

the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or

procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**B.**    **Vote Required for Acceptance by Classes of Claims**

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by

holders of at least two-thirds in dollar amount and more than one-half in number of the claims of

that class which actually cast ballots for acceptance or rejection of the Plan.  Thus, acceptance by

4018401.4
4040818.1

a class of claims occurs only if at least two-thirds in dollar amount and a majority in number of the holders of such claims actually voting cast their ballots in favor of acceptance. A Class of Holders of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

CREDITORS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE DISCLOSURE STATEMENT ORDER AND THE PLAN FOR A FULL UNDERSTANDING OF VOTING REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, USE OF BALLOTS.

## ARTICLE VIII

## CONFIRMATION OF THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

**A.    Confirmation Hearing**

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. By order of the Bankruptcy Court, the Confirmation Hearing has been scheduled for _____, 2010 at _____ a.m. (prevailing Eastern Time) before the Honorable James M. Peck, United States Bankruptcy Judge, in United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and set forth the

4018401.4
4040818.1

name of the objecting party, the nature and amount of the Claim or Equity Interest held or asserted by the objecting party against the Debtor's estate or property, the basis for the objection and the specific grounds therefor.  The objection, together with proof of service thereof, must then be filed with the Bankruptcy Court, with a copy to chambers, and served upon: (a) counsel to the Debtor, Riker, Danzig, Scherer, Hyland & Perretti LLP, One Speedwell Avenue, Morristown, New Jersey 07962-1981, Attn.: Joseph L. Schwartz, Esq (jschwartz@riker.com), (b) counsel to the Committee, Olshan Grundman Frome Rosenzweig & Wolosky LLP, Park Avenue Tower 65 East 55th Street, New York, New York  10022, Attn. Michael S. Fox, Esq. (mfox@olshanlaw.com) (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.: Nazar Khodorovsky and (d) those parties filing notices of appearance.

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014.   UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND PROPERLY SERVED AND FILED BY _____, 2010 (PREVAILING EASTERN STANDARD TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## B.    Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of Bankruptcy Code § 1129 are met.  Among the requirements for confirmation are that the Plan (a) is accepted by all Impaired Classes of Claims and Equity Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (b) is feasible and (c) is in the "best interests" of Holders of Claims and Equity Interests impaired under the Plan.

4018401.4
4040818.1

3. <u>Acceptance</u>

Claims in Class 3 are impaired and the Holders of such Claims are entitled to vote on the Plan.

Claims in Class 1 and 2 are unimpaired by the Plan, and the Holders thereof are conclusively presumed to have accepted the Plan and are therefore not entitled to vote on the Plan.

Class 4 Equity Interest Holders are impaired and are deemed to have rejected the Plan because they will not receive a Distribution or retain any property under the Plan.  Members of Class 4 are not entitled to vote because they are deemed to have rejected the Plan under Bankruptcy Code § 1126(g).

4. <u>Fair and Equitable Test</u>

The Debtor and the Committee will seek to confirm the Plan notwithstanding the nonacceptance or deemed nonacceptance of the Plan by any impaired Class of Claims.  To obtain such confirmation, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such dissenting impaired Class.  A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class receives more than it is entitled to for its claims or interests.  The Debtor and the Committee believe that the Plan satisfies this requirement.

The Bankruptcy Code establishes different "fair and equitable" tests for secured claims, unsecured claims and interests, as follows:

<u>Secured Claims</u>:  Either the Plan must provide:  (i) for the holders of such claims to retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and each holder of a claim receives deferred cash payments totaling at least the

40

allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in such property; (ii) for the sale of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale; or (iii) for the realization by such holders of the indubitable equivalent of such claims.

Unsecured Claims:  Either (i) each holder of an impaired unsecured claim receives or retains under the Plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the Plan.

Equity Interests:  Either (i) each interest holder will receive or retain under the Plan property of a value equal to the greater of (y) the fixed liquidation preference or redemption price, if any, of such stock or (z) the value of the stock, or (ii) the holders of interests that are junior to the stock will not receive any property under the Plan.

THE DEBTOR AND THE COMMITTEE BELIEVE THAT THE PLAN MAY BE CONFIRMED ON A NONCONSENSUAL BASIS (PROVIDED AT LEAST ONE IMPAIRED CLASS OF CLAIMS VOTES TO ACCEPT THE PLAN).  ACCORDINGLY, THE DEBTOR AND THE COMMITTEE WILL DEMONSTRATE AT THE CONFIRMATION HEARING THAT THE PLAN SATISFIES THE REQUIREMENTS OF BANKRUPTCY CODE § 1129(b) AS TO ANY NON-ACCEPTING CLASS.

5.    Feasibility

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor other than as set forth in such plan.  The Debtor has already sold substantially all of its assets and ceased its business operations.  The Plan contemplates that all remaining assets of the Debtor will be liquidated and all proceeds of the assets will be distributed to the creditors pursuant to the terms of the Plan. Since no further financial reorganization of the Debtor will be possible, the Debtor believes that the Plan meets the feasibility requirement.  In addition, based upon the availability of assets for distribution, the Debtor believes that sufficient funds will exist at confirmation to make all payments required by the Plan.

4018401.4
4040818.1

6.    "Best Interests" Test

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Plan requires that each such Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

This analysis requires the Bankruptcy Court to determine what the Holders of Allowed Claims and Allowed Equity Interests in each Impaired Class would receive from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  To determine if the Plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the Debtor's unencumbered assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of Claims and Equity Interests under the Plan.  Here, as set forth on the "Liquidation Analysis" which is attached hereto as Exhibit C, the Debtor believes that Holders of Allowed Claims and Allowed Equity Interests will receive more pursuant to the Plan than in a chapter 7 liquidation, based in large part, upon the increased cost of administration of a chapter 7 liquidation.

**ARTICLE IX**

**FINANCIAL INFORMATION**

The Debtor has filed Statements of Financial Affairs and Schedules of Assets and Liabilities with the Bankruptcy Court as required by the Bankruptcy Code.  As debtor-in-possession, the Debtor has filed and will continue to file monthly operating reports required by the United States Trustee operating guidelines.  This financial information may be examined in

42

4018401.4
4040818.1

the Bankruptcy Court Clerk's Office.  Also, attached hereto as <u>Exhibit D</u> is the Debtor's most current unaudited balance sheet.

## ARTICLE X

## <u>ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN</u>

If the Plan is not confirmed and consummated, the alternatives include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) dismissal of the Chapter 11 Case.

If no plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate any remaining assets of the Debtor for distribution to its creditors in accordance with the priorities provided for in the Bankruptcy Code.  The Debtor and the Committee believe that conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code would result in diminished distributions to creditors due to the increased costs of administration in a chapter 7 case.  <u>See</u> Liquidation Analysis attached hereto as <u>Exhibit C</u>.

## ARTICLE XI

## <u>CERTAIN <span style="color:red"><s>FEDERAL INCOME</s></span> TAX CONSEQUENCES OF THE PLAN</u>

<span style="color:blue"><u>A.</u>    <u>Tax Consequences of Confirmation.</u></span>

<span style="color:blue"><u>IRS CIRCULAR 230 DISCLAIMER:  To ensure compliance with requirements imposed by the Internal Revenue Service (the "IRS"), we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s) addressed herein.</u></span>

<span style="color:red"><s>The confirmation and execution of the Plan</s></span><span style="color:blue"><u>Confirmation</u></span> may have <span style="color:blue"><u>federal income</u></span> tax consequences <span style="color:red"><s>to Holders of Claims and Equity Interests.  Neither the Debtor nor the Committee</s></span>

43

<span style="color:red">4018401.4</span>
<span style="color:blue">4040818.1</span>

offer any opinion as to any federal, state, local, or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Plan.  All Holders of Claims and Equity Interests **for the Debtor and Holders of Claims or Interests.  The Plan Proponents have not obtained and do not intend to request a ruling from the IRS, nor have the Plan Proponents obtained an opinion of counsel with respect to any tax matters.  Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder.  Creditors** are urged to consult their own ~~tax advisors with respect to the federal,~~ **counsel and tax advisors as to the consequences to them, under federal and applicable** state, local and foreign tax ~~consequences of the Plan.  THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR.~~**laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional.  The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly, each Holder of a Claim is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan.**

**B.     Tax Consequences to the Debtor.**

         **The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because § 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from the discharge of debt.  However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; and (v) foreign tax credits.**

~~4018401.4~~
4040818.1

**C.**     **Disclaimer.**

          **Holders of Claims or Interests should not rely on this Disclosure Statement with respect to the tax consequences of the Plan.  They should consult with their own tax counsel or advisor.  The discussion of tax consequences in this Disclosure Statement is not intended to be a complete discussion or analysis.**

4018401.4
4040818.1

## CONCLUSION AND RECOMMENDATION

The Debtor and the Committee believe that the Plan is in the best interests of all Holders of Claims and urge the Holders of Claims in Class 3 to vote to accept the Plan and to evidence such acceptance by returning their Ballots to the Balloting Agent at the address set forth on page 5 of this Disclosure Statement so that they will be actually received on or before 4:00 p.m., prevailing Eastern Time, on_____, 2010.

Respectfully submitted,

SIGNATURE APPAREL GROUP, LLC

By:  /s/ Joseph Laurita
    Name: Joseph Laurita
    Title: Chairman

Dated: ~~March 31,~~**May 12,** 2010

- and –

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SIGNATURE APPAREL GROUP, LLC

By:  /s/ Andrew Tarshis
    Name: Andrew Tarshis
    Title:  Member and Authorized Signatory

Dated: ~~March 31,~~**May 12,** 2010

4018401.4
4040818.1