**OLSHAN GRUNDMAN FROME**
**ROSENZWEIG & WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Michael S. Fox, Esq.
Ellen V. Holloman, Esq.
Tel.: (212) 451-2300
Fax: (212) 451-2222

*Counsel to Anthony Labrosciano*
*Responsible Person for*
*Signature Apparel Group LLC*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| SIGNATURE APPAREL GROUP LLC, | Chapter 11 |
| | Case No. 09-15378 (JMP) |
| Debtor. | |
| SIGNATURE APPAREL GROUP LLC | |
| Plaintiff, | |
| v. | Adv. Pro. No. _____ |
| JOSEPH LAURITA, CHRISTOPHER LAURITA, ADELINE LAURITA, JACQUELINE LAURITA and ANTHONY LAURITA, | |
| Defendants. | |

## **COMPLAINT**

Signature Apparel Group LLC, the reorganized debtor in the above-referenced matter

("Signature" or the "Company"), through its responsible person, Anthony Labrosciano, and by

1112128-1

and through its counsel, as and for its Complaint against Joseph Laurita, Christopher Laurita, Adeline Laurita, Jacqueline Laurita and Anthony Laurita, alleges as follows:

## Nature of the Action

1.      Signature, an apparel company that was founded in 2005 by brothers Joseph and Christopher Laurita, initially enjoyed success as licensees of Rocawear, Artful Dodger, and other popular garment brands.  However, the Laurita brothers soon drained the Company of all of its funds and assets in order to support their families' increasingly opulent lifestyle of private jets, limousines, extravagant parties, premium automobiles, designer clothing, ostentatious home furnishings and lavish vacations.  In addition, instead of being used to sustain and develop Signature's business, and pay Signature's vendors and creditors, Signature's assets were misused to make outright and unjustified payments to Laurita family members, and to fund the operations of the Laurita brothers' other companies and business ventures.  The Laurita brothers also directed certain of Signature's vendors to make payments owed to Signature to the Laurita brothers' other companies and business ventures instead, further depleting the Company's assets. By this action, Signature's Responsible Person seeks a judgment in the aggregate amount of at least $7,804,227.00 against Defendants.

## Parties and Procedural Background

2.      Plaintiff Signature is a limited liability company organized under the laws of the State of New York.  Prior to its bankruptcy, Signature had its principal place of business at 1370 Broadway, 6th Floor, New York, New York.

3.      Upon information and belief, defendant Joseph Laurita is a citizen and a resident of California.  At all material times relevant hereto, Joseph Laurita was a member and an officer and/or director of Signature, owning a 50% share of the Company.

2

1112128-1

4.     Upon information and belief, defendant Christopher Laurita is a citizen and a resident of New Jersey.  At all material times relevant hereto, Christopher Laurita was a member and an officer and/or director of Signature, owning a 50% share of the Company.

5.     Upon information and belief, defendant Anthony Laurita is a citizen and a resident of New Jersey.

6.     Upon information and belief, defendant Adeline Laurita is a citizen and a resident of California.

7.     Upon information and belief, defendant Jacqueline Laurita is a citizen and a resident of New Jersey.

8.     Upon information and belief, Joseph Laurita, Christopher Laurita and Anthony Laurita are brothers, Adeline Laurita is Joseph Laurita's wife, and Jacqueline Laurita is Christopher Laurita's wife.  Joseph, Christopher, Anthony, Adeline and Jacqueline Laurita are collectively referred to herein as the "Laurita Family Defendants" or "Defendants", and Joseph and Christopher Laurita are collectively referred to herein as the "Laurita Director Defendants".

9.     On information and belief, Francis "Frank" Laurita is the son of defendants Joseph and Adeline Laurita.  Frank Laurita is believed to be deceased.

10.    On September 4, 2009 (the "Petition Date"), petitioning creditors Hitch & Trail Inc., Talful, Ltd. and Harvestway (China) Limited (the "Petitioning Creditors") filed an involuntary petition against Signature in the United States Bankruptcy Court for the Southern District of New York, seeking relief under chapter 7 of title 11 of the United States Bankruptcy Code.

11.    On November 9, 2009, Signature filed a *Motion to Convert Case to a Case Under Chapter 11*.  That motion was granted on November 12, 2009.

3

12.    On June 29, 2010, a chapter 11 plan of reorganization was confirmed by this Court.  Pursuant to the chapter 11 plan and the order confirming the plan, Anthony Labrosciano is the responsible person of Signature, as reorganized.

### Jurisdiction and Venue

13.    This adversary proceeding is brought in this Court, in which the main underlying bankruptcy proceeding, *In re Signature Apparel Group LLC*, Case No. 09-15378 (JMP), is pending (the "Bankruptcy Proceeding").  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and § 157, Rule 7001 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

14.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

15.    Venue is proper in this Court and district under 28 U.S.C. § 1409.

### Factual Background

### The Business

16.    Upon information and belief, Signature was formed in 2005 by brothers Joseph and Christopher Laurita, as a privately-owned, multi-faceted apparel company in the business of designing, manufacturing and distributing branded apparel worldwide.

17.    Upon information and belief, in or about 2005, Signature entered into an exclusive license with a predecessor-in-interest of Iconix Brand Group, Inc. ("Iconix") to design, manufacture and distribute junior's apparel bearing the "Rocawear" trademarks (the "Rocawear License"), which license was assigned in or about 2007 to Studio IP Holdings LLC, a subsidiary of Iconix.

18.    Upon information and belief, thereafter in or about November 2007, Signature entered into an exclusive license with a subsidiary of Iconix, Artful Holdings LLC, to design,

4

manufacture and distribute apparel bearing the "Artful Dodger" trademarks (the "Artful Dodger License").

19.    Upon information and belief, beginning in or about 2005, Signature designed, manufactured and distributed apparel pursuant to the Rocawear License and, beginning in or about 2007, Signature designed, manufactured and distributed apparel pursuant to the Artful Dodger License, and sold such apparel to Signature's wholesale customers throughout the United States.

20.    Upon information and belief, Signature achieved more than two hundred and fifty million dollars ($250,000,000.00) in sales from Rocawear and Artful Dodger branded apparel alone between 2005 and 2009.

**The Diversion of Signature's Corporate Monies**

21.    Between at least November 1, 2007 and November 13, 2009 (the "Relevant Time Period"), the Laurita Director Defendants directed Signature to pay the personal expenses of, and make outright payments to, the Laurita Family Defendants and Frank Laurita.  The Laurita Director Defendants also directed Signature to pay the expenses of and make payments to other companies owned, controlled by or affiliated with the Laurita Director Defendants, including Pyramid Trading Inc., Pyramid Trading Corp., Retail Solutions, Four Brothers Retail and Cool Five LLC (collectively referred to as the "Laurita Pyramid Companies"), or to companies or business ventures in which the Laurita Director Defendants were investing, including Angelo's Favorite, The Hungry Ghosts Movie LLC, and the BSTC Group.

22.    Those improper payments have no legitimate business purpose, provided no value to Signature, and include:

(i)    at least $1,994,845.00 in credit card payments for the Laurita Family Defendants and the Laurita Pyramid Companies during the Relevant Time

5

Period, including payments to American Express (25 separate accounts), Advanta (2 separate accounts), Bank of America (3 separate accounts), Chase (5 separate accounts), CitiCards (3 separate accounts); Discover Cards (2 separate accounts) and a JC Penney MasterCard;

(ii)    at least $331,637.00 for payments on no less than eleven leased cars, including a Bentley and a Maserati, for the Laurita Family Defendants during the Relevant Time Period, including payments to Allpoints Capital Corp., BMW Financial Services, Chase, Chase Auto Finance, Chrysler Financial, GMAC, Land Rover Capital Group, Mercedes-Benz Financial, Putnam Leasing Company, Inc., Buerge Chrysler Jeep (Los Angeles), Hornburg Jaguar (Santa Monica), Jaguar and Rover (Newport Beach), Land Rover (Paramus), Miller Motorcars (Greenwich, Connecticut), Prestige Mercedes (Paramus), The Karl Chevrolet, Volvo (Westport Connecticut) and Wide World of Cars (Spring Valley);

(iii)   at least $284,793.00 in airline travel expenses for the Laurita Family Defendants during the Relevant Time Period, including payments to Aerolineas Argentina, Aerovias Nacionales, Air Hot Fees, Alitalia Airline, America Airlines, Asiana Airlines, British Airways, Cathay Pacific, China Eastern Airlines, Continental Airline, Copa Airlines, Delta Airlines, Hon Kong Dragon Airlines, Jet Blue, Midwest Airlines, Northwest Airlines, SN Brussels Airlines, Southwest Airlines, United Airlines, US Airways and Virgin America, as well as payment for flight insurance fees to Airflight Insurance, Expedia Services and Orbitz.com;

(iv)    at least $145,894.00 for private airplane rentals for the Laurita Family Defendants during the Relevant Time Period, including payments to Jet Access Group, Blue Star Jets LLC and SilverJet;

(v)     at least $25,000.00 during the Relevant Time Period to Studio Dante, an off-Broadway theater company created by Michael Imperioli of HBO's *The Sopranos*, for production expenses for the film *The Hungry Ghosts*;

(vi)    at least $73,793.00 for taxi, limousine and car-service-related expenses for the Laurita Family Defendants during the Relevant Time Period, including payments to Partners Executive Transportation, Rudy's Limousine, Access Limo, ATLS, BLS Limo, CLS Nevada LLC, New Style Limousine, NWA Taxi, NYC Taxi Medallion, Taxi Pass and Town Limousine;

(vii)   at least $16,951.00 for car rentals for the Laurita Family Defendants during the Relevant Time Period, including payments to Avis, Budget, Dollar, Enterprise, Hertz, Rent-a-Car and Thrifty;

6

(viii)   at least $5,813.00 in travel tolls for the Laurita Family Defendants during the Relevant Time Period, including payments to EZ Pass and Plate-Pass;

(ix)   at least $6,207.00 in car insurance premiums for the Laurita Family Defendants during the Relevant Time Period, including payments to Selective Insurance Company;

(x)   at least $28,711.00 in miscellaneous transportation-related expenses for the Laurita Family Defendants during the Relevant Time Period, including payments for parking, car washes, car repairs and gasoline;

(xi)   at least $7,280.00 for travel agent expenses for the Laurita Family Defendants during the Relevant Time Period, including payments to Expedia.com and Oasis Travel, among others;

(xii)   at least $1,084.00 for train travel expenses for the Laurita Family Defendants during the Relevant Time Period, including payments to Metro North and NYC Transit;

(xiii)   payments and disbursements during the Relevant Time Period totaling at least $1,379,187.00 to defendant Joseph Laurita, for undocumented or insufficiently documented reasons;

(xiv)   payments and disbursements during the Relevant Time Period totaling at least $755,184.00 to defendant Christopher Laurita, for undocumented or insufficiently documented reasons;

(xv)   an outright payment to defendant Adeline Laurita of $62,500.00 during the Relevant Time Period, for undocumented or insufficiently documented reasons;

(xvi)   an outright payment to defendant Anthony Laurita of $40,000.00 during the Relevant Time Period, for undocumented or insufficiently documented reasons;

(xvii)   an outright payment to Frank Laurita of $20,909.00 during the Relevant Time Period, for undocumented or insufficiently documented reasons;

(xviii)   at least $325,696.00 in payments during the Relevant Time Period to or on behalf of other entities owned or controlled by the Laurita Director Defendants, including the Laurita Pyramid Companies, or to entities in which the Laurita Director Defendants were investing, including Angelo's Favorite, The Hungry Ghosts Movie LLC, and the BSTC Group;

(xix)   at least $791,509.00 in payments to or on behalf of Roc Apparel Group LLC for undocumented or insufficiently documented reasons;

7

(xx) at least $4,860.00 to Walter Bagdon during the Relevant Time Period for rent and utilities expenses for the premises at 78 Valley Road in Connecticut, the site of another of the Laurita Director Defendants' companies, Pyramid Trading Inc. and Pyramid Trading Corp.; and

(xxi) at least $784,160.00 of disbursements directed by the Laurita Director Defendants to unknown recipients, without any documentation whatsoever.

23. These payments totaled at least and no less than $7,086,013.00 (the "Fraudulent Transfers"). At all relevant times, the Laurita Director Defendants had control over Signature's funds and the Company checkbook, and therefore were able to make the Fraudulent Transfers for the benefit of the Laurita Family Defendants, the Laurita Pyramid Companies and other entities in which the Laurita Director Defendants were investing. At this time, the Company lacks sufficient information to specify the total amount of money and other property that comprises all of the Fraudulent Transfers. The Company will seek leave to amend this Complaint when additional information is obtained concerning other monies and property that were fraudulently transferred by or for the benefit of the Laurita Family Defendants and the Laurita Pyramid Companies.

24. The Fraudulent Transfers were made voluntarily by Signature, for inadequate consideration and with the actual intent to hinder, delay or defraud some or all of Signature's then existing and/or future creditors (including, without limitation, the Petitioning Creditors). At all relevant times, Defendants had actual knowledge regarding the unlawful nature of the Fraudulent Transfers.

25. In addition, upon information and belief, during the Relevant Time Period the Laurita Director Defendants improperly directed Signature's vendors, including certain of the Petitioning Creditors, to make payments to certain of the Laurita Pyramid Companies of funds that were rightfully owed to Signature. Those payments include the following:

8

(i)    a payment to Pyramid Trading Inc. of $102,627.00 on November 2, 2007;

(ii)   a payment to Pyramid Trading Inc. of $102,826.00 on November 26, 2007;

(iii)  a payment to Pyramid Trading Inc. of $17, 759.00 on December 18, 2007;

(iv)   a payment to Pyramid Trading Inc. of $375,000.00 on August 15, 2008; and

(v)    a payment to Pyramid Trading Inc. of $120,000.00 October 21, 2008.

26.    Those payment totaled at least and no less than $718,214.00 (the "Diverted Funds"), and further depleted Signature's assets.

27.    The transfer of the Diverted Funds was made for inadequate consideration and with the actual intent to hinder, delay or defraud some or all of Signature's then existing and/or future creditors (including, without limitation, the Petitioning Creditors). At all relevant times, the Laurita Director Defendants had actual knowledge regarding the unlawful nature of the transfer of the Diverted Funds from Signature to the Laurita Pyramid Companies, including Pyramid Trading.

28.    Upon information and belief, the Laurita Director Defendants, post-Petition Date, coordinated the transfer of the Rocawear License and the Artful Dodger Licenses to a third-party, as a new licensee, in exchange for a percentage of the gross revenues from the Licenses. That transfer provided the Laurita Director Defendants with continuing income from the Rocawear and Artful Dodger Licenses, while reducing Signature to an empty shell with little or no means to pay its debts or continue its business.

## COUNT I
### Breach of Fiduciary Duty
### (Against the Laurita Director Defendants)

29.    Plaintiff incorporates paragraphs 1-28 as if fully set forth herein.

9

30.     At all relevant times herein, the Laurita Director Defendants were fiduciaries to Signature, and as such, owed fiduciary duties of loyalty and good faith to the Company.

31.     The Laurita Director Defendants breached those fiduciary duties by using Company funds for the payment of their own personal expenses and the personal expenses of the Laurita Family Defendants, and to make outright payments for undocumented reasons to themselves, defendants Adeline and Anthony Laurita, and to Frank Laurita, for amounts that were not owed by Signature.

32.     As a direct and proximate result of the Laurita Director Defendants' conduct, Signature was damaged in an amount to be determined, but believed to be not less than $7,086,013.00, plus interest.

## COUNT II
### Breach of Fiduciary Duty
### (Against the Laurita Director Defendants)

33.     Plaintiff incorporates paragraphs 1-32 as if fully set forth herein.

34.     At all relevant times herein, the Laurita Director Defendants were fiduciaries to Signature, and as such, owed fiduciary duties of loyalty and good faith to the Company.

35.     Upon information and belief, the Laurita Director Defendants breached those fiduciary duties by diverting to the Laurita Pyramid Companies funds that were owed, and should have been paid, to Signature.

36.     The Laurita Director Defendants further breached those fiduciary duties by conveying away the Rocawear and Artful Dodger Licenses while retaining for themselves, rather than Signature, a percentage of the gross fees from the Licenses.

10

1112128-1

37.    As a direct and proximate result of the Laurita Director Defendants' conduct, Signature was damaged in an amount to be determined, but believed to be not less than $718,214.00, plus interest.

### COUNT III
### Aiding and Abetting Breach of Fiduciary Duty
### (Against Adeline, Jacqueline and Anthony Laurita)

38.    Plaintiff incorporates paragraphs 1-37 as if fully set forth herein.

39.    The Laurita Director Defendants owed fiduciary duties to Signature, and breached those duties by using Company funds for their own personal expenses, and making payments to themselves and their family members from Company funds for amounts not owed to them by Signature.

40.    Adeline, Jacqueline and Anthony Laurita each knew of the Laurita Director Defendants' wrongful conduct, and each substantially assisted the Laurita Director Defendants in breaching their fiduciary duties by, among other conduct, accepting funds they each knew belonged to Signature and for which they each knew they had performed no services and/or provided no value.

41.    The wrongful conduct of Adeline, Jacqueline and Anthony Laurita contributed to and exacerbated Signature's insolvency.

42.    As a direct and proximate result of Adeline, Jacqueline and Anthony Laurita's respective wrongful conduct, Signature was damaged in an amount to be determined, but believed to be not less than $7,086,013.00, plus interest.

### COUNT IV
### Corporate Waste
### (Against the Laurita Director Defendants)

43.    Plaintiff incorporates paragraphs 1-42 as if fully set forth herein.

11

1112128-1

44.     At all relevant times, the Laurita Director Defendants were directors and/or members of Signature.  As such, the Laurita Director Defendants were in control of Signature and its management, operations, and affairs.

45.     The Laurita Director Defendants wrongfully caused Signature to make outright payments and other transfers to themselves, the Laurita Family Defendants, Frank Laurita, and the Laurita Pyramid Companies and to other companies and business ventures in which the Laurita Director Defendants were investing.  After Signature's bankruptcy, the Laurita Director Defendants conveyed the Licenses away from Signature while retaining for themselves a percentage of gross fees from the Licenses, further damaging Signature and effectively rendering the Company an empty shell with no means to pay its creditors.  This conduct caused the funds and property of Signature to be squandered, grossly mismanaged and wasted, and contributed to, exacerbated, deepened and/or caused Signature's insolvency.

46.     As a result of the Laurita Director Defendants' wrongful conduct, funds that should have been used to grow Signature's business and to pay Signature's vendors and creditors, instead were diverted to the Laurita Family Defendants, the Laurita Pyramid Companies and other companies and business ventures in which the Laurita Director Defendants were investing.  That diversion of funds constituted a waste of corporate assets and opportunities.

47.     As a direct and proximate of the Laurita Director Defendants' wrongful conduct, Signature was damaged in an amount to be determined, but believed to be not less than $7,804,227.00, plus interest.

**COUNT V**
**Conversion**
**(Against all Defendants)**

48.     Plaintiff incorporates paragraphs 1-47 as if fully set forth herein.

12

49.      Signature had a possessory right and interest to its assets, including its receipts, accounts receivable, property and general funds.

50.      Defendants converted Signature's assets and property when they received monies in the form of payments and other wrongful transfers.  Defendants' actions deprived Signature of its use of its assets, and contributed to, exacerbated, deepened or caused Signature's insolvency.

51.      As a direct and proximate result of Defendants' wrongful conduct, Signature has not had use of the assets, property and funds converted by Defendants, and was damaged in an amount to be determined, but believed to be not less than $7,804,227.00, plus interest.

### COUNT VI
### Unjust Enrichment
### (Against all Defendants)

52.      Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

53.      Defendants each benefitted from the receipt of money from Signature in the form of outright payments and other improper transfers, which were the rightful property of Signature, and for which Defendants did not adequately compensate or provide value to Signature.

54.      This enrichment was at the expense of Signature and, ultimately, at the expense of Signature's creditors.

55.      Equity and good conscience require full restitution of the funds received by Defendants from Signature.

56.      As a direct and proximate result of Defendants' wrongful conduct, Signature was damaged in an amount to be determined, but believed to be not less than $7,804,227.00, plus interest.

57.      Further, the Defendants' wrongful conduct entitles Signature to recapture any profits derived by Defendants using funds received from Signature, including, by way of

13

1112128-1

example and without limitation, profits earned from other of Defendants' business ventures, such as the Laurita Pyramid Companies, that received or utilized any of Signature's funds, and from the Rocawear and Artful Dodger Licenses.

## COUNT VII
## Constructive Trust
## (Against all Defendants)

58.     Plaintiff incorporates paragraphs 1-57 as if fully set forth herein.

59.     At all relevant times herein, the Laurita Director Defendants were fiduciaries to Signature, and as such, owed fiduciary duties of loyalty and good faith to the Company.

60.     The Laurita Director Defendants breached those fiduciary duties by using Company funds for their and their family's personal expenses, making payments to themselves and their family members from Signature's funds and assets for amounts not owed to them, and by diverting funds that should have been paid to Signature to the Laurita Pyramid Companies, and to other companies and business ventures in which the Laurita Director Defendants were investing.

61.     Defendants Adeline, Jacqueline and Anthony Laurita aided and abetted those breaches of fiduciary duty by accepting funds they each knew belonged to Signature and for which they each knew they had performed no services and/or provided no equivalent value.

62.     Defendants each benefitted from the receipt of money from Signature in the form of outright payments and other transfers, which were the property of Signature, and for which Defendants did not adequately compensate or provide value to Signature.

63.     This enrichment was at the expense of Signature and, ultimately, at the expense of Signature's creditors.

14

64.    Equity and good conscience require the full restitution of the funds received by Defendants from Signature.

65.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiff was damaged in an amount to be determined, but believed to be not less than $7,804,227.00, plus interest.

66.    All monies received by Defendants for personal or undocumented expenses from Signature should be held in constructive trust for Signature.

**COUNT VIII**
**Monies Had and Received**
**(Against all Defendants)**

67.    Plaintiff incorporates paragraphs 1-66 as if fully set forth herein.

68.    Defendants took monies which, in good conscience belonged to Signature.

69.    As a result, the Plaintiff was damaged in an amount to be determined, but believed to be not less than $7,804,227.00, plus interest.

**COUNT IX**
**Fraudulent Transfer pursuant to 11 U.S.C. § 548 (a)(1)(A) and 11 U.S.C. § 550**
**(Against all Defendants)**

70.    Plaintiff incorporates paragraphs 1-69 as if fully set forth herein.

71.    The Fraudulent Transfers to Defendants were made within two years prior to the Petition Date and constituted a transfer of interests in property of Signature.

72.    The Fraudulent Transfers were made voluntarily by Signature for inadequate consideration and with the actual intent to hinder, delay or defraud some or all of Signature's then existing and/or future creditors (including, without limitation, the Petitioning Creditors).

73.    With the intent to divert corporate funds outside of the reach of Signature's creditors and for their own benefit, Defendants knowingly caused the Fraudulent Transfers to be

15

made to themselves for little or no consideration.  At all relevant times, Defendants had actual knowledge regarding the unlawful nature of the Fraudulent Transfers.

74.    Because of the Fraudulent Transfers, Signature was unable to pay its debts to its creditors.

75.    Upon information and belief, at all times when the Fraudulent Transfers were made, Signature was insolvent, or became insolvent as a result of such Fraudulent Transfers, or was engaged or about to be engaged in a business or transaction for which its remaining property was unreasonably small.

76.    Because of the Fraudulent Transfers, Signature was unable to pay its debts to creditors.

77.    Accordingly, each of the Fraudulent Transfers are avoidable transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code and Plaintiff may recover, for the benefit of Signature's estate, the Fraudulent Transfers from Defendants pursuant to section 550 of the Bankruptcy Code.

## COUNT X
### Fraudulent Transfer pursuant to 11 U.S.C. §548 (a)(1)(B) and 11 U.S.C. §550
### (Against all Defendants)

78.    Plaintiff incorporates paragraphs 1-77 as if fully set forth herein.

79.    The Fraudulent Transfers to the Laurita Family Defendants were made within two years prior to the Petition Date and constituted a transfer of interests in property of Signature.

80.    Signature received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

81.    Upon information and belief, at all times when the Fraudulent Transfers were made, Signature was insolvent, or became insolvent as a result of such Fraudulent Transfers, or

16

1112128-1

was engaged or about to be engaged in a business or transaction for which its remaining property was unreasonably small.

82.    Because of the Fraudulent Transfers, Signature was unable to pay its debts to creditors.

83.    The Fraudulent Transfers ultimately benefitted the Laurita Family Defendants, to the detriment of Signature's creditors.

84.    Accordingly, the Fraudulent Transfers are avoidable transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code and Plaintiff may recover, for the benefit of Signature's estate, the Fraudulent Transfers from Defendants pursuant to section 550 of the Bankruptcy Code.

## COUNT XI
### Fraudulent Transfer Pursuant to 11 U.S.C. § 544 and
### New York Debtor & Creditor Law §§ 276 and 276-A
### (Against all Defendants)

85.    Plaintiff incorporates paragraphs 1-84 as if fully set forth herein.

86.    The Fraudulent Transfers were made with the actual intent to hinder, delay or defraud either present or future creditors of Signature (including, without limitation, the Petitioning Creditors).

87.    As a result of the Fraudulent Transfers, Signature has been damaged in an amount believed to be at least and not less than $7,086,013.00, plus interest; Signature moreover is entitled to attorneys' fees pursuant to New York Debtor and Creditor Law Section 276-A.

## COUNT XII
### Fraudulent Transfer Pursuant to 11 U.S.C. § 544 and
### New York Debtor & Creditor Law §§ 273, 274 and 275
### (Against all Defendants)

88.    Plaintiff incorporates paragraphs 1-87 as if fully set forth herein.

17

1112128-1

89. The Fraudulent Transfers were made without fair consideration to Signature.

90. On information and belief, Signature was insolvent when the Fraudulent Transfers were made, or became insolvent as the result of the Fraudulent Transfers.

91. As a result of the Fraudulent Transfers, Signature was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Signature was unreasonably small.

92. As a result of the Fraudulent Transfers, Signature intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured.

93. As a result of the Fraudulent Transfers, Signature has been damaged in an amount to be determined, but believed to be at least and not less than $7,086,013.00, plus interest.

## COUNT XIII
### Piercing the Corporate Veil
### (Against the Laurita Director Defendants)

94. Plaintiff incorporates paragraphs 1-93 as if fully set forth herein.

95. Upon information and belief, the Laurita Director Defendants are the sole officers, owners, and/or shareholders of Signature and the Laurita Pyramid Companies.

96. Upon information and belief, Signature and the Laurita Pyramid Companies were grossly undercapitalized at their respective inception, and their respective assets were unreasonably small in proportion to their respective obligations.

97. The Laurita Director Defendants failed to respect the separate legal existences of Signature and the Laurita Pyramid Companies, and treated the assets of those companies as if those assets were the Laurita Director Defendants' own personal assets, including, by way of example, using Signature's funds to pay the personal expenses of the Laurita Family Defendants, causing the Diverted Funds to be conveyed away from Signature to Pyramid Trading Inc.,

18

1112128-1

making other fraudulent transfers to the Laurita Pyramid Companies, and conveying the Rocawear and Artful Dodger Licenses to a third party while retaining for themselves a percentage of the gross fees received from those licenses.

98.    Utilizing their positions in Signature and the Laurita Pyramid Companies, the Laurita Director Defendants, in concert with one another, have wrongfully utilized and depleted the corporate assets of Signature to further their own individual financial interests, in total disregard of the interests of Signature.

99.    The Laurita Director Defendants, in concert with one another, have wrongfully siphoned corporate funds from Signature which resulted in the Signature becoming grossly undercapitalized to the point of financial extinction, while amassing personal assets for themselves and their family members.

100.    Upon information and belief, to this day, the Laurita Director Defendants, while claiming the financial crises of Signature, still drive luxurious vehicles, own buildings and residences and have assets which may be worth millions of dollars.

101.    Signature was so controlled and dominated by the Laurita Director Defendants, and its separate legal existence so ignored, that Signature primarily transacted the personal business of the Laurita Director Defendants, and is therefore a mere instrumentality and the alter ego of the Laurita Director Defendants.

102.    Such control and domination has been exercised to commit fraud and engage in other wrongful conduct, which has resulted in an unjust financial loss and injury to Plaintiff.

103.    As a matter of equity, Plaintiff is entitled to pierce the corporate veil of the Laurita Pyramid Companies, and to reach the asset of the Laurita Director Defendants, jointly and severally, to satisfy any judgment obtained in this litigation.

1112128-1

## COUNT XIV
### Objection to Defendants' Claims
### (Against all Defendants)

104.    Plaintiff incorporates paragraphs 1-103 as if fully set forth herein.

105.    One or more of the Defendants has filed, or will file, a claim in the Bankruptcy

Proceeding.

106.    Defendants' claims (the "Claims") are not supported by the books and records of

Signature, or the claim materials submitted by Defendants, and therefore should be disallowed.

107.    The Claims also should not be allowed as general unsecured claims.  Defendants

are the recipients of transfers of Signature's property which is recoverable under Sections 548

and 550 of the Bankruptcy Code and Defendants have not yet returned the transfers to Signature

or Signature's responsible person.  As a result, under the Bankruptcy Code, the Claims must be

disallowed unless and until the Defendants return the transfers.

108.    As a result of the foregoing, Signature is entitled to an order disallowing the

Claims.

### <ins>REQUEST FOR RELIEF</ins>

**WHEREFORE**, the Plaintiff requests that the Court enter judgment:

(i)     on Count I, an amount to be determined but believed to be not less than
$7,086,013.00, plus interest;

(ii)    on Count II, an amount to be determined  but believed to be not less than
$718,241.00, plus interest;

(iii)   on Count III, an amount to be determined but believed to be not less than
$7,804,227.00, plus interest;

(iv)    on Count IV, an amount to be determined but believed to be not less than
$7,804,227.00, plus interest;

(v)     on Count V, an amount to be determined but believed to be not less than
$7,804,227.00, plus interest;

20

1112128-1

(vi)   on Count VI, impressing a trust on all returned funds for the benefit of Signature;

(vii)   on Count VII, an amount to be determined but believed to be not less than $7,804,227.00, plus interest;

(viii)   on Count VIII, an amount to be determined but believed to be not less than $7,804,227.00, plus interest;

(ix)   on Counts IX, X, XI and XII, judgment avoiding and preserving the Fraudulent Transfers, directing that the Fraudulent Transfers be set aside, and recovering the Fraudulent Transfers or the value thereof to return to Signature;

(x)   on Count XIII, judgment against Joseph Laurita and Christopher Laurita, jointly and severally, for an amount to be determined, but believed to be not less than $7,804,227.00, plus interest.

(xi)   on Count XIV, an order setting aside and disallowing the Claims;

(xii)   requiring Defendants to pay to the Plaintiff all reasonable attorneys' fees and costs incurred by the Plaintiff in this action; and

(xiii)   granting such other and further relief, at law or in equity, that the Court may deem just.


Date:   New York, New York
         November 3, 2010

**OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY, LLP**

/s/ Michael S. Fox, Esq.
Michael S. Fox, Esq.
Ellen V. Holloman, Esq.
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Tel.: (212) 451-2300
*Counsel to Anthony Labrosciano*
*Responsible Person for*
*Signature Apparel Group LLC*